500 P.2d 1132

**CITY OF PHOENIX, a municipal corporation, Appellant and Cross-Appellee,**

v.

**William PRICE, Appellee and Cross-Appellant.**

**No. 1 CA–CIV 1824.**

Court of Appeals of Arizona, Division 1.

Sept. 14, 1972.

Rehearing Denied Nov. 1, 1972.

Review Denied Dec. 12, 1972.

Joe R. Purcell, Phoenix City Atty., by Edward P. Reeder, Asst. City Atty., Phoenix, for appellant and cross-appellee.

Leibsohn, Eaton, Gooding & Romley, P. C. by William H. Gooding, Phoenix, for appellee and cross-appellant.

HOWARD, Judge.

On November 4, 1969, appellee Price filed a rezoning application with the City of Phoenix Planning Department requesting that certain real property, consisting of three lots, owned by him and located near the intersection of 16th St. and Glendale Avenue, be rezoned from R1–10 to R1–6. Under R1–10 zoning, property can only be developed for single-family residences on lots of 10,000 square feet or more while R1–6 zoning allows single family residences on lots of 6,000 square feet or more. The application was heard by the Planning Commission on December 9, 1969, and the Planning Commission recommended that the application be denied. A public hearing on the application was held before the Phoenix City Council on March 24, 1970, and the City Council also denied the application for rezoning. The Planning Commission having denied applicant's request, waived the one-year waiting period to re-file his application, as required by city ordinance. The property owner initiated this action for a declaratory judgment, seeking a determination that the existing R1–10 single-family residence zoning on the property was unreasonable, confiscatory, and violated his rights under the United States Constitution, the Arizona Constitution, the laws of the State of Arizona, and the Zoning Ordinance of the City of Phoenix.

The case was tried to the court sitting without a jury and judgment was entered, based upon findings of fact and conclusions of law, in favor of the property owner as to two of the three portions of the property and in favor of the city as to the remaining lot. The city here appeals that portion of the judgment which declared the R1–10 zoning on Lots 26 and 27 of the subject property to be arbitrary and unreasonable and the landowner appeals that portion declaring the R1–10 classification on Lot 25 to be reasonable.

■ The Phoenix City Council, in adopting R1–10 zoning for the subject property, acted in a legislative capacity, Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101 (1959), cloaking the ordinance with a presumption of validity. Mueller v. City of Phoenix, 102 Ariz. 575, 435 P.2d 472 (1967); City of Phoenix v. Fehlner, 90 Ariz. 13, 363 P.2d 607 (1961).

■ Thus, in order to have this zoning ordinance declared unconstitutional, the plaintiff was required to affirmatively show that the restriction was "clearly arbitrary and unreasonable," without "any substantial relation to the public health, safety, morals, or general welfare." City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923 (1928).

Here, as in Rubi v. 49'er Country Club Estates, Inc., 7 Ariz.App. 408, 411, 440 P. 2d 44, 47 (1968):

"Of critical importance . . . is the limited role of the judiciary in zoning cases. Courts are ill equipped to sit as super-zoning commissions. Therefore, where the reasonableness of a zoning ordinance is fairly debatable, it must be upheld."

Thus, the trial court's findings and conclusions as to the reasonableness of the ordinance are not binding on this court if the record shows the question is "debatable." Rubi v. 49'er Country Club Estates, Inc., supra; Hamer v. Town of Ross, 59 Cal.2d 776, 31 Cal.Rptr. 335, 382 P.2d 375 (1963). As quoted in *Rubi* from Lockard v. City of Los Angeles, 33 Cal.2d 453, 202 P.2d 38 at 43 (1949):

"The appellate courts look beyond such determinations and consider in some detail the basic physical facts appearing in the record, such as the character of the property of the objecting parties, the nature of the surrounding territory, the use to which each has been put, recent trends of development, etc., to ascertain whether the reasonableness of the ordinance is fairly debatable. [Citations omitted] Similarly, findings which relate to matters of opinion and judgment, such as that property is 'suitable only' for certain purposes, are not controlling. [Citations omitted] As we have seen, matters of this type lie within the discretion of the zoning authorities, and their action will be upheld if the question is fairly debatable." 7 Ariz.App. at 412, 440 P.2d at 48.

As can be seen from Appendix A the subject property is located on the northwest corner of Glendale Avenue and 17th Street in Phoenix, Arizona. It is bounded on the southwest by the Arizona Canal, across which the property is zoned C–2. The area to the immediate west is zoned R–3, to the north and east R1–10, and to the southeast is fully developed R1–6. On the C–2 property across the canal is locat-ed a gas station, an animal hospital and a dental office. Across Glendale Avenue to the south is located a Lucky Discount Store. The R–3 property to the west is vacant. However, there is a 64-unit apartment complex to the northwest of the subject property. The area to the north is relatively underdeveloped, but that across 17th St. to the east has been developed under R1–10 zoning. Mr. Price paid $26,000 for the property in 1964 with the idea of rezoning and the court found that it has a present value of $30,000 which would increase to $60,000 if it were zoned R1–6.

The court further found that:

"6. Under the present zoning, it would be practically impossible to get mortgage financing for development of the subject property.

 *     *     *     *     *     *

13. Because of the location of the subject property, it would not be possible to sell homes in a price range of $45,000 to $50,000 were they built on the subject property.

14. Lot 25, which is the northern portion of the subject property, contains less rubble and is not adjacent to Glendale Avenue or to the canal and is fairly well removed from the commercial center at 16th Street and Glendale Avenue.

 *     *     *     *     *     *

16. Several dozen single family homes in the $30,000.00 to $45,000.00 price range have been built in the last four years in subdivisions zoned R1–10 on land located within one mile of the subject property to the east, northeast and southeast of the subject property. Some of said houses cost upwards of $50,000.00. From 30 to 50 new single family homes are now under under [sic] construction in said area."

Based upon its findings of fact, the trial court entered the following conclusions of law:

"1. The designated zoning of R1–10 on Lots 26 and 27 of the subject property is arbitrary and unreasonable.

2. If the R1–10 zoning is enforced, plaintiff will be precluded from using Lots 26 and 27 of the subject property for any purpose to which [sic] is reasonably adopted.

3. The R1–10 zoning on Lots 26 and 27 has no substantial relation to the public health, safety, morals or general welfare of the community.

4. Because of the shape, condition and location of Lot 25 of the subject property, the designated zoning R1–10 is reasonable."

■ The plaintiff's theory was that the R1–10 zoning as to the subject parcels was confiscatory, hence invalid. Thus, he was required to show that the property could not be used as presently zoned. City of Phoenix v. Fehlner, supra; Rubi v. 49'er Country Club Estates, Inc., supra. We do not believe the plaintiff made the requisite showing.

The owner relied heavily upon the testimony of Mr. Blommet, a mortgage broker, who testified that he did not think that mortgage financing would be available in that area with the cost of improved lots of between $10,000 and $15,000, which these would be.

The city's expert, however, testified that mortgage financing should be available for developing the subject property as zoned but not necessarily for homes within the price range which the owner had envisioned.

Without going into the details of the evidence presented by each party, the factual dispute herein can be summarized as follows: Plaintiff maintains that because of the proximity to the canal and the commercial establishments at 16th Street and Glendale Avenue, the cost of improving the lots, and the neighboring R–3 zoning, the subject property cannot be successfully developed from an economic standpoint as presently zoned. The city, however, takes the position that, while a greater profit might be realized if the zoning change were granted, the property can be developed as zoned, as evidence by the surrounding developments, the canal is an ideal zoning boundary, a rezoning such as plaintiff seeks would result in a lowering of property values in the developed R1–10 to the east, and to allow the rezoning would "open the door" to future requests from other property owners in the area.

■ We find that the evidence presented to the trial court shows the reasonableness of the R1–10 zoning on the subject property to be "fairly debatable" within the meaning of *Rubi*. We note that plaintiff has relied heavily upon City of Phoenix v. Burke, 9 Ariz.App. 395, 452 P.2d 722 (1969), wherein Division One of this court expressly rejected the holding of *Rubi* with Judge Stevens dissenting. The facts here are admittedly strikingly similar to *Burke*, however we decline to accept the reasoning set forth therein and would reiterate the language of Judge Stevens in his dissent:

"In my opinion the rules set forth in *Rubi*, cited in the majority opinion with disfavor, are sound. It is noted that the Arizona Supreme Court was asked to review *Rubi* and declined to do so. In my opinion the record does not warrant a judicial overthrow of the legislative act of the City of Phoenix.

While not controlling, it is of interest to note that the property owners purchased the property with knowledge of the zoning and with the hope that it could be changed with a resulting increase in value. I am impressed that both of the zoning classifications in question are for human habitation." 9 Ariz.App. at 399, 452 P.2d at 726.

That portion of the judgment declaring the zoning R1–10 on Lots 26 and 27 to be arbitrary and unreasonable is reversed and that portion declaring the zoning on Lot 25 to be reasonable is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.