524 P.2d 1314

**CITY OF PHOENIX, a municipal corporation, Appellant,**

v.

**Donald L. BEALL, D.D.S., Michael G. Churosh, D.D.S., and J. A. Schmitzer, D.D.S., Appellees.**

**No. 1 CA–CIV 2422.**

Court of Appeals of Arizona,
Division 1,
Department A.

July 25, 1974.

Joe R. Purcell, City Atty. of Phoenix, by Donald W. Lindholm and Edward P. Reeder, Asst. City Attys., for appellant.

Burch, Cracchiolo, Levie, Guyer & Weyl, by C. Michael Pierce, Phoenix, for appellees.

## OPINION

STEVENS, Judge.

The trial court entered a judgment changing a zoning classification as to a particular piece of property. The appellees were the plaintiffs in the trial court.

The judgment entered by the trial court recites:

"This matter was tried to the Court, taken under advisement, and legal memoranda by counsel for both parties were submitted and considered:

"NOW THEREFORE the Court declares that:

"1. The denial of plaintiffs' request for rezoning from R–3 to C–O bore no real or substantial relation to public health, safety, morals or general welfare and unreasonably deprived plaintiffs of all practical use of their parcel of land without compensation."

Doctor Beall has lived north of Bethany Home Road since he commenced his practice and has frequently traveled Seventh Avenue to and from his office. He had observed vacant land at the northwest corner of Seventh Avenue and Maryland. This will be referred to as the subject property. There has been little apparent change in the subject property or the character of the surrounding area for several years other than structures which meet R–3 zoning standards. The zoning of the area surrounding the subject property, a part of the City's comprehensive plan, has been predominantly R–3 for some time, the exact date not being established.

To enable Dr. Beall to secure the facilities he desired, he needed between 30,000 and 40,000 square feet of land area. This would enable him to erect a building of 8,000 square feet of floor area. Of this, he and Dr. Schmitzer together would use approximately 3,000 square feet. Dr. Churosh would use approximately 3,000 square feet and other dentists could rent the balance. There would be room for an increase in the staff serving the dentists.

In about 1965 or 1966 Dr. Beall, with some help, began looking for suitable land. The subject property is located near the population center of the patients of Drs. Beall and Schmitzer. Doctor Beall found other properties of sufficient size but for personal preference reasons selected the subject property. Persons adjacent to the subject property encouraged his purchase and development. Hoping that he could secure a zoning change from R–3 to CO (by-passing R–4 and R–5, R–4 zoning having been denied in 1969), Dr. Beall paid a "premium price" for the subject property, buying one lot in July 1971 and the other lot in September 1971. He testified that the land value under R–3 zoning would be $30,000.00, that he paid a total of $53,400.00 for the property and that with CO zoning it would be worth $60,000.00. He acquired almost 37,000 square feet of land area. (There are 43,560 square feet in an acre.)

Doctor Beall secured a site plan, employed counsel and applied for a zoning change from R–3 to CO. CO zoning would allow "services" such as medical offices, legal offices and the like.

The professional planning staff of the City made a study and recommended against a zoning change. The staff indicated that it would not disapprove the site plan if the subject property was rezoned CO. The problem then is the zoning change request. A hearing was held by the City's Planning Commission, a commission functioning pursuant to A.R.S. § 9–463 (prior to the legislative changes of 1973). The commission members present voted unanimously in favor of the change. A commission recommendation, favorable or unfavorable, must be secured before the Council of the City can entertain a zoning change (A.R.S. § 9–462, prior to 1973). The appropriate hearing was held by the City Council on 15 March 1972. The Council had before it the staff recommendation, the proceedings before the Planning Commission and the recommendation of the Planning Commission. There was also an oral presentation. By a unanimous vote of the members present, the City Council rejected the requested zoning change.

The plaintiff sued for a declaratory judgment and after a trial with testifying witnesses, a number of exhibits, the judgment quoted early in this opinion was entered. The record before the trial court and before this Court does not contain the

staff study and recommendation, a record of the proceedings before the Planning Commission or a record of the proceedings before the City Council.

At the trial it was stipulated that there were witnesses available to the plaintiffs who were favorable to the change and witnesses available to the City who were opposed to the change.

Immediately to the north of the subject property, on the same side of Seventh Avenue, Blankenship was building a townhouse complex, proper in R–3 zoning. The land area is approximately five acres which Blankenship acquired by purchases in January, May and December 1971.

At Seventh Avenue and West Bethany Home Road there is a Bayless shopping center. The evidence does not disclose whether the land was so used before annexation or whether it was rezoned.

William Brown, a contractor and real estate developer, who had been a member of the Planning Commission for approximately one year before that Commission gave favorable consideration to the plaintiffs' request for a zoning change, was called as a witness for the plaintiffs. Brown is a licensed contractor and a licensed real estate broker. He has done some R–3 building. His company looked at the subject property in late 1969 and concluded that "it was too small for *our* use, and the location * * * we felt it was too busy in relation to its size for the use for R–3." (Emphasis added). He estimated a need of six to ten acres for an R–3 development on a commercial scale. He stated that a developer would not be interested in the subject property. He admitted that the property could be developed under R–3 zoning. Brown expressed pride in the high quality of the City's planning staff and its planning capabilities.

Paul J. Margaritis, a builder and developer, testified for the plaintiffs. He said no sophisticated builder or developer would build with R–3 zoning; the property was too small. When asked if he could make money developing the land at any price he responded that it was not a fair question. He had not made a detailed study of the property, "but logically it just doesn't appear on the surface as being a sound development either for patio homes or anything else."

Richard Thomas testified for the plaintiffs. His company is "a home builder primarily in the townhouse-patio home area." He would not consider less than three acres. He was unable to give a "yes or no" answer to the question whether it would be possible to develop the subject property to R–3 standards. Thomas also had a kind word for the City's staff which he found to be very helpful.

Stanley J. Dru, a successful developer of apartments and medical buildings for his own retained ownership, expressed the opinion that the subject property was too small for an R–3 development. He had never attempted to develop that small a property. While he would not be willing to develop the subject property, he did state "I am sure somebody would be willing to do so. But I don't know."

Don Everett Patterson a city planner on the staff of the City, testifed the area in question is zoned R–3 pursuant to the City's comprehensive plan. He and the City Council do not approve of spot zoning. He explained the reasons for resisting spot zoning. CO zoning would be appropriate as a buffer between commercial and residential zoning but not in the center of an R–3 area. The surrounding area "is one of the most solid residential neighborhoods in Phoenix that has protective zoning." The plaintiffs' request for a zoning change was not an unusual request.

Gerald Paller has been successful with R–3 construction on a parcel even smaller than the subject property. After he examined the property he expressed the opinion that it could be developed R–3. If the price was right he would be willing to undertake such construction.

Leslie D. Ryan, an MAI appraiser, appraised the subject property with R–3 zoning at $51,000.00.

**144**

## ARE ZONING CHANGES LEGISLATIVE?

■ The plaintiffs concede that the enactment of an overall zoning ordinance is legislative action. They contend that the City Council, in enacting or declining to enact a zoning amendment of the type which the plaintiffs request, is acting more nearly in a judicial than in a legislative capacity. This contention appears to relate to the quantum of proof necessary for a court decision overturning the refusal to rezone. We do not agree. The United States Supreme Court in Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), stated:

" * * * But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative not a judicial function." [Footnote omitted.] — U.S. at ——, 94 S.Ct. at ——, 39 L.Ed. 2d at 803, 804.

The Arizona Legislature in empowering cities to zone specifies that zoning and zoning changes be "by ordinance." [1] The Arizona cases recognize that zoning is legislative and that there is a presumption of the validity of zoning enactments. Hart v. Bayless Investment & Trading Company, 86 Ariz. 379, 346 P.2d 1101 (1959); City of Phoenix v. Fehlner, 90 Ariz. 13, 363 P.2d 607 (1961); Rubi v. 49er Country Club Estates, Inc.,[2] 7 Ariz.App. 408, 440 P.2d 44 (1968) (petition for review denied); Courson v. City of Tucson, 10 Ariz.App. 159, 457 P.2d 346 (1969) (petition for review denied); Peabody v. City of Phoenix, 14 Ariz. App. 576, 485 P.2d 565 (1971) (petition for review denied); and City of Phoenix v. Price, 18 Ariz.App. 144, 500 P.2d 1132 (1972), (petition for review denied).

## HEALTH, SAFETY, MORALS OR GENERAL WELFARE

The United States Supreme Court in Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016 (1926), established the health, safety, morals or general welfare test for zoning. This is repeated in Arizona as follows:

"§ 9–461. Zoning powers of cities and towns

"A. For the purpose of promoting the health, safety, morals or the general welfare *of the community*, the governing body of an incorporated city or town may regulate and restrict * * * the percentage of a lot that may be occupied, * * * the location and use of buildings, structures and land for trade, industrial, residential or other purposes, * * * as may be deemed best suited for such purposes." (Emphasis added)

Zoning will be upheld unless it is clearly arbitrary and unreasonable and without a substantial relation to public health, safety, morals or general welfare. The City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923 (1928); Fehlner, supra; Rubi, supra; Courson, supra; Price, supra; and Klensin v. City of Tucson, 10 Ariz.App. 399, 459 P.2d 316 (1969).

## FAIRLY DEBATABLE

■■ If the evidence is fairly debatable the zoning or failure to change the zoning as requested will be upheld in the appellate courts. Arizona Mortuary, supra; Fehlner, supra; Rubi, supra; Courson, supra; Hawes v. Cooper, 14 Ariz.App. 88, 480 P.2d 1005 (1971); Peabody, supra; Price, supra.

The test to be used by the trial court is that zoning will be upheld unless it is clear-

---

1. "§ 9–462. Zoning ordinances; adoption; limitations

"A. The governing body may provide *by ordinance* for the manner in which regulations and restrictions and the boundaries of districts shall be determined, established and enforced. *No ordinance shall be enacted nor any amendments made thereto until after* *a public hearing* in relation thereto at which parties in interest and citizens shall have an opportunity ·to be heard." (Emphasis added)

2. Rubi contains an excellent review of the case law.

ly arbitrary and unreasonable and without substantial relation to public health, safety, morals or general welfare. Zoning ordinances are presumed valid, and where the reasonableness of the ordinance is fairly debatable, the trial court must uphold its validity.

■■ What is the applicable standard to be used by the appellate court in reviewing the trial court's decision to upset the zoning ordinance which in effect finds that the presumption of validity of zoning has been overcome? In one case, City of Phoenix v. Burke, 9 Ariz.App. 395, 452 P.2d 722 (1969), a case not presented to our Supreme Court for review, the majority of the Court used the usual standards of review in civil actions, namely, that the trial court will be upheld if there is evidence in support of its judgment. We hold that the test applied in Burke is not the law in Arizona. Rubi, supra, and Price, supra, properly declare the applicable law. The ruling of a trial court which upsets zoning will be upheld only if the zoning is clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals or general welfare. Furthermore, if in a review of the record, the appellate court finds that it is fairly debatable as to whether the zoning is clearly arbitrary and unreasonable and without a substantial relation to the above factors, then the zoning or the failure to amend the zoning will be upheld and the trial court will be reversed. The fact that the property would be more valuable if zoned for a different use is not controlling. Arizona Mortuary, supra; Fehlner, supra; Klensin, supra.

■■ It is recognized that zoning may be upheld in relation to the overall plan for the "welfare of the community" (A. R.S. § 9–461, prior to 1973) and at the same time may be upset as to an individual parcel. Village of Euclid, supra. At the same time one who buys an area which may be too small to develop under the existing zoning in the hopes of or on the gamble of securing a zoning modification cannot be heard to complain when the legislative body declines to change the overall plan for the benefit of the gambling buyer.

■ From our review of the record the issues were fairly debatable. The failure to rezone is upheld. This cause is reversed with directions to enter a judgment dismissing the plaintiffs' complaint.

OGG, Acting P. J., and HAIRE, J., concur.