727 P.2d 339
**Randolph J. HAINES,**
**Appellant/Cross-Appellee,**

v.

**CITY OF PHOENIX, a political subdivision of the State of Arizona; and the Adams Group, Inc., an Arizona corporation, Appellees/Cross-Appellants.**

**No. 2 CA–CIV 5657.**

Court of Appeals of Arizona,
Division 2, Department A.

March 20, 1986.

Reconsideration Denied April 22, 1986.

Randolph J. Haines, Phoenix, in Pro. Per.

Roderick G. McDougall, Phoenix City Atty. by Michael D. House, Phoenix, for appellee/cross-appellant City of Phoenix.

Martori, Meyer, Hendricks & Victor by Larry A. Hammond and William J. Maledon, Phoenix, for appellee/cross-appellant Adams Group.

## OPINION

HATHAWAY, Chief Judge.

Appellant contests the trial court's granting of summary judgment in affirmance of the City of Phoenix's (city) authority to rezone the parcel in controversy. Appellees cross-appeal and challenge the trial court's finding that the city has adopted a general or specific plan of urban development. We agree with the trial court on both counts and affirm.

On January 1, 1974, Arizona's Urban Environment Management Act (act) became effective. Laws 1973, Chapter 178; A.R.S. § 9–461 et seq. The act requires municipalities to adopt long-range, general plans for urban development. A.R.S. § 9–461.-05(A). The act also authorizes specific plans. A.R.S. § 9–461.08. The act re-

quires municipal zoning ordinances be consistent with the general plans. § 9–462.-01(E). On July 3, 1979, the city adopted two plans—the Phoenix Concept Plan 2000 and the Interim 1985 Plan. It is disputed whether these plans are general or specific plans as defined by the statute.

This action arose from the Phoenix City Council's granting of a "height waiver" for a highrise office project that is proposed to be constructed by appellee Adams Group on 14.48 acres of land on Central Avenue between Glenrosa and Turney avenues in Phoenix. The property was zoned C–2H–R (intermediate commercial highrise) and subject to a 250–foot highrise limitation. The 1985 plan also limits to 250 feet buildings in the area in which this parcel is located.

On July 29, 1983, the Adams Group submitted an application to amend the city zoning ordinance to permit a building on the parcel in excess of the 250–foot height limitation. The rezoning application was heard by the planning commission on November 16, 1983. That body recommended denial by a 3 to 2 vote. Pursuant to § 108–J.1 of the city zoning ordinance the Adams Group requested the city council to hold a public hearing on the application and not to adopt the planning commission's recommendation. Two hearings were held, on December 19, 1983 and February 6, 1984. On February 6, the city council approved a rezoning which allowed the Adams Group to erect a 500–foot building. Appellant then filed this action alleging the city council's action is inconsistent with the general or specific plans and therefore is in violation of A.R.S. § 9–462.01(E). Appellees argue that the city had not adopted either a general or specific plan at the time of the city council action and the only issue before the city council was whether there was compliance with § 412–B.2–F(1) of the Phoenix Zoning Ordinance, permitting height amendments.[1]

It is without dispute that the city council complied with § 412–B.2–F(1). The trial

court, on August 17, 1984, granted appellant partial summary judgment finding that the city had adopted a general or specific plan. On November 26, 1984, however, the trial court entered summary judgment finding that the city council's action did not violate A.R.S. § 9–462.01(E), and therefore dismissed appellant's complaint. Appellant appealed and appellees cross-appealed.

Appellant raises one issue on appeal: The trial court erred in finding that the rezoning was in compliance with A.R.S. § 9–462.01(E). Appellees raise two issues on appeal: (1) Phoenix has not adopted a general or specific plan and is not subject to the limitations of § 9–462.01(E) and (2) in any event, the actions of the city council were in compliance with both the Concept Plan 2000 and the 1985 plan.

## I. HAS THE CITY ADOPTED A GENERAL OR SPECIFIC PLAN?

■ The act does not establish a timetable for the adoption of a general plan. Therefore, if the city was found not to have a general plan at this time, it would not be in violation of the act absent a showing of bad faith.

A.R.S. § 9–461(1) states a general plan means:

"... [A] municipal statement of land development policies, which may include maps, charts, graphs and text which set forth objectives, principles and standards for local growth and redevelopment enacted under the provisions of this article or any prior statute."

A.R.S. § 9–461(5) states a specific plan means:

"... [A] detailed element of the general plan enacted under the provisions of this article or a prior statute."

■ It is clear that both the Concept Plan 2000 and the Interim Plan 1985 meet the definition for a general plan. Additionally, Interim Plan 1985 could be viewed as

---

1. We note that subsequent to the filing of this action on October 2, 1985, the city adopted a plan it acknowledges is a general plan. General Plans for Phoenix 1985–2000. That plan, however, is irrelevant to the current dispute.

a specific plan for the implementation of the general plan pronounced in Concept Plan 2000. Concept Plan 2000 establishes the policy of dividing the city into villages, each containing a core, gradient and periphery. Interim Plan 1985 establishes specific criteria for the implementation of that policy in the Encanto Area in which this dispute occurred. Additionally, there is not any evidence that these two plans were not adopted under the provisions of the article pursuant to A.R.S. § 9–461.06. The real debate concerns A.R.S. § 9–461.05, which enunciates the scope of a general plan.

A.R.S. § 9–461.05(C) and (D) require the general plan to contain nine distinct elements. Those elements are:

1. A land use element.
2. Circulation element.
3. Conservation element.
4. Recreation element.
5. Public services and facility element.
6. Public buildings element.
7. Housing element.
8. Conservation rehabilitation and redevelopment element.
9. Safety element.

A review of the two plans establishes that some of the above-required elements have not been addressed by either Concept Plan 2000 or Interim Plan 1985. The question before this court, therefore, is whether the missing elements negate Concept Plan 2000 and Interim Plan 1985 as general or specific plans or are irrelevant to the existence of a plan and establish only that the city's plans are presently incomplete. We find the latter course of reasoning applies.

While these plans are probably not satisfactory in their completeness, they are clearly plans according to the statutory definition. Appellees' reasoning would permit the city to perpetually avoid urban planning by leaving out any element or any subdivision of an element defined in § 9–461.05. This would produce the untenable result of the slightest omission causing the

city to have no plan.[2] Additionally, appellees argue that Concept Plan 2000 stated it was only the beginning of the development of a general plan and argue it cannot be interpreted to be a general plan. A rose by any other name, however, still smells as sweet, and the city cannot avoid implementation of the statute by creating a plan and then stating it is not one. Concept Plan 2000 and Interim Plan 1985 fit the statutory definitions and are therefore general and specific plans as defined by A.R.S. § 9–461(1, 5).

## II. WAS THE REZONING IN CONFORMITY WITH THE PLAN?

■ A. Applicability of A.R.S. § 9–462.01(E). A.R.S. § 9–462.01(E) states:

"All zoning ordinances or regulations adopted under this article shall be consistent with the adopted general or specific plans of the municipality...."

We must consider whether an amendment to a rezoning ordinance, such as we have in the current situation, falls under the mandate of this statute which only specifically states it applies to "zoning ordinances or regulations." While there are no Arizona decisions on point, other jurisdictions have held the requirement of conformity to the general plan is applicable to amendments as well as to the original zoning ordinance. See e.g., *Hines v. Pinchback-Halloran Volkswagen, Inc.,* 513 S.W.2d 492 (Ky. 1974); *Udell v. Haas,* 21 N.Y.2d 463, 288 N.Y.S.2d 888, 235 N.E.2d 897 (1968); *Roseta v. Washington County,* 254 Or. 161, 458 P.2d 405 (1969); *Putney v. Abington Township,* 176 Pa.Super. 463, 108 A.2d 134 (1954). The above decisions reason that the legislature intended to protect landowners in the populace from arbitrary and impulsive use of the zoning power and that such a safeguard would be meaningless unless applied to amendments of the ordinance. Other jurisdiction have held, however, that where the amendment itself constitutes a change in the comprehensive plan

---

**2.** The General Plan for Phoenix 1985–2000 does address all nine elements outlined in A.R.S.   § 9–461.05(C) and (D).

the limiting statute is not applicable. See e.g., *Shell Oil Company v. Edwards*, 263 Ala. 4, 81 So.2d 535, cert. den. 350 U.S. 885, 76 S.Ct. 139, 100 L.Ed. 780 (1955); *Pierrepont v. Zoning Commission of Town of Ridgefield*, 154 Conn. 463, 226 A.2d 659 (1967). The current situation is controlled by the first line of cases inasmuch as the record supports no such intention by the city council. Therefore, the present amendment is valid only if it is consistent with the general and specific plans. We save for another time the issue of whether the effect of § 9–462.01(E) is vitiated if the city council attempts both to amend the zoning ordinance and the general plan at the same time. See *Town of Bedford v. Village of Mt. Kisco*, 33 N.Y.2d 178, 351 N.Y.S.2d 129, 306 N.E.2d 155 (1973), reargument den. 34 N.Y.2d 668, 355 N.Y.S.2d 1027, 311 N.E.2d 655 (1974); *Graham v. City of Raleigh*, 55 N.C.App. 107, 284 S.E.2d 742 (1981), rev. den. 305 N.C. 299, 290 S.E.2d 702 (1982).

B. Is the amendment consistent with the general and specific plan? Normally the level of judicial review of a zoning ordinance or amendment is the rational basis test. See *Wait v. City of Scottsdale*, 127 Ariz. 107, 618 P.2d 601 (1980). This test is utilized because zoning or rezoning is a legislative act not a quasi-judicial act. *Wait v. City of Scottsdale*, supra; *City of Phoenix v. Beall*, 22 Ariz.App. 141, 524 P.2d 1314 (1974). Under the rational basis test if the court can hypothesize any rational reason why the legislative body made the choice it did, the statute or ordinance is constitutionally valid. This test validates statutes even if the legislative body did not consider the reasons articulated by the court. See *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The reason for the adoption of the rational basis test was to prevent courts from sitting as super-legislatures and thereby prevent infringement upon the separation of powers. Of course, when fundamental constitutional liberties are at stake, courts will use a higher level of scrutiny. See *Williamson*, supra.

If we were to apply the rational basis review to the current situation, we would presume the rezoning to be valid and would uphold its validity if we could hypothesize any reason why the city council may have believed the rezoning was consistent with the general plan. Some courts have taken this approach to deciding whether a zoning amendment is consistent with a general plan. *Barret v. County of Shelby*, 619 S.W.2d 390 (Tenn.App.1981); see also *Environmental Council of Sacramento v. Board of Supervisors of Sacramento County*, 135 Cal.App.3d 428, 185 Cal.Rptr. 363 (1982). Appellant argues, however, that the passage of § 9–462.01(E) vitiates the above normal level of review. He argues that if rational basis review is utilized, the legislative mandate requiring consistency between zoning and the general plan is without any force. Appellant argues instead that, due to the statute, there be no presumption of legislative validity and the city council be required to make written findings and articulate reasons for any deviation from the general plan. There is support for this approach. See *Roseta v. County of Washington*, supra, and *Love v. Board of County Commissioners of Bingham County*, 105 Idaho 558, 671 P.2d 471 (1983).

We, however, reject both of the above approaches. By the enactment of § 9–462.01(E), the legislature has provided a standard by which to review zoning decisions in addition to the usual constitutional standard. That standard is consistency with the general plan. In our review, however, we will not substitute our judgment for that of the duly elected legislative body, the city council. Therefore our review will consist of viewing the record that was before the city council and determining if, from that evidence, the council could have decided that despite the deviation from the letter of the plan there was consistency. The burden of proof will still be on the plaintiff to show inconsistency.

Consistency has been defined as "basic harmony." J. Di Mento, the Consistency Doctrine and the Limits of Plan-

ning (1980). See also Op.Ky. Att'y Gen. 68–558 (1968). Therefore in the current situation if from the evidence before it the city council could have determined that the rezoning was in basic harmony with the general plan, the rezoning is valid. Of course in cases where the rezoning does not deviate from the general plan, rational basis review will still be utilized.

■ This rezoning did deviate from the general plan in that it surpassed by a large margin the 250–foot height restriction. The plan, however, has other goals for that area. The plan does provide that gradient areas where this proposed building lies will have some concentrations of landuse in sub cores. Also there is a provision for commercial development of the Central Avenue corridor. The building height restrictions are only stated in precatory language. Additionally, the plan provided for open space in the gradient, encouragement of landscaping, areas for people to enjoy and commercial development. The city council had before it evidence that this building would be commercially beneficial, would provide open spaces and recreational areas, landscaping, etc. The council also heard testimony that the developer could build two 20–story buildings which would leave less open space and less potential recreational areas. In viewing the above evidence, we cannot say the city council was wrong in finding the rezoning in basic harmony with the general plan. We do not need specific findings by the council to come to this conclusion since we have viewed the same evidence the council viewed. Certainly written findings would be preferable, but they are not mandatory.

■ C. Spot zoning. Although not argued by appellant, the issue of spot zoning must be addressed. Spot zoning is not per se invalid and validity turns on the circumstances of the particular situation. *Mahoney v. O'Shea Funeral Homes, Inc.*, 45 N.Y.2d 719, 408 N.Y.S.2d 470, 380 N.E.2d 297 (1978). Courts have held that there is not illegal spot zoning when the zoning ordinance is in accordance with the general or comprehensive plan designed to promote general welfare. *Board of Supervisors of Henrico County v. Fralin and Waldron, Inc.*, 222 Va. 218, 278 S.E.2d 859 (1981). As we have held above, the amendment granted by the city council was in compliance with the general plan of the city. Therefore this amendment did not constitute illegal spot zoning.

Affirmed.

FERNANDEZ, J., concurs.

HOWARD, Presiding Judge, specially concurring.

I concur in the result but not the reasoning of the majority opinion because I do not believe that the Phoenix Concept Plan 2000 and Interim 1985 Plan were general plans enacted pursuant to the Urban Environment Management Act, and therefore no consistency was required. The Urban Environment Management Act requires municipalities to adopt a comprehensive long-range plan for the development of the municipality. "General Plan" is defined in A.R.S. § 9–461(1) as a "municipal statement of land development policies, which may include maps, charts, graphs and text which sets forth objectives, principles and standards for local growth and redevelopment enacted *under the provisions of this article* or any prior statute." (Emphasis added.) A general plan adopted pursuant to the act must contain nine specified elements.

In addition to adopting a general plan, a municipality may but is not required to adopt specific plans. As already observed by the majority, although a municipality that desires to engage in planning is required to adopt a general plan, the statute imposes no time limitation for doing so. Furthermore, pursuant to A.R.S. § 9–462.-04(E), a municipality is not required to adopt a general plan prior to the adoption of a zoning ordinance. Therefore, it seems obvious that all zoning ordinances adopted by the city do not constitute a "general plan." Rather, it must be a comprehensive plan enacted pursuant to the provisions of the act.

A reading of the Phoenix Concept Plan 2000 and the Interim 1985 Plan and their adopting resolutions discloses that the city council did not intend these documents to serve as the city's general plan. Resolution No. 15227, which adopted the Phoenix Concept Plan 2000, contains the following statement of legislative intent:

"WHEREAS, the Phoenix Concept Plan 2000 is only the beginning of the development of a general plan for Phoenix and plans for each of the villages and areas identified in the plan...."

Moreover, several statements in the plan itself clearly show the intent of the city council that the document not be considered a general plan:

" * * * The [Urban Village] map is a graphic representation of the urban village concept in Phoenix and is intended primarily to identify the areas to be planned by the urban village planning committees....

The planning and implementation program [to bring about the goals of the plan] would include preparation of the nine general plan elements required by the State and the preparation of a plan for each village by 1985.

* * * * * *

The 2000 plan will serve as the guide for planning in Phoenix. It suggests that the city government should concern itself with decisions of city-wide importance and delegate responsibility for making decisions of less than city-wide importance. It does this by requiring the development of two sets of plans—(1) a General Plan including the following nine elements: Land Use, Circulation, Conservation, Housing, Recreation, Public Buildings, Neighborhood Rehabilitation and Redevelopment, Public Services and Facilities, and Safety, and (2) a Specific Plan for each urban village or planning area. These plans would be developed, progress toward them monitored, and appropriate amendments made on a continuing basis. The General Plan will be prepared in accord with Arizona Statutes and the Specific Plans for urban villages

in accord with the Charge to Urban Village Planning Committees.

* * * * * *

The goals [listed in the plan] as well as the plan and policies should form the basis for development of General Plan Elements and Urban Village Plans.

* * * * * *

This [implementation] program should include the following accomplishments by 1985.

a. Preparation of the nine General Plan Elements required by the State. Preparation of the Land Use and Circulation Elements should begin immediately. The circulation element should include a long-range transit plan.

b. Appointment of a village planning committee and preparation of a village implementation program for each village."

Similarly, Resolution No. 15228 which adopted the Interim 1985 Plan contains, inter alia, the following statement of legislative intent:

"WHEREAS, the Phoenix Concept Plan 2000 is only the beginning of the development of a general plan for Phoenix and the plans for each of the villages and areas identified in the plan ...

* * * * * *

WHEREAS, the Interim 1985 Plan is intended as a guide for making the public and private development decisions until the village and area plans are prepared and adopted ..."

In addition, in the very first paragraph of the text of the Interim 1985 Plan it is emphasized that the plan is a supplement to the Phoenix Concept Plan 2000 acting as a guide for the planning commission and city council on zoning decisions.

The foregoing statements leave no doubt that the city council did not intend the Phoenix Concept Plan 2000 and the Interim 1985 Plan to be the city's general plan. The majority has come to the conclusion that these documents must be a general plan even if the city council intended otherwise, apparently upon the belief that since the sole source of municipal authorization

to adopt plans is contained in the act, any plan adopted by the city must, a fortiori, be a general plan. I do not agree. Unquestionably, the state has preempted the field of planning, and any general or specific plan must be adopted in accordance with the requirements of the act. *Levitz v. State,* 126 Ariz. 203, 613 P.2d 1259 (1980). However, nothing in the statute supports the conclusion that conceptual interim guidelines, such as the Phoenix Concept Plan 2000 and the Interim 1985 Plan, *must* be considered to be general plans. The city's mistake was, apparently, in calling these "plans" instead of "concepts for future planning," which is what they are. The Phoenix Concept Plan 2000 and the Interim 1985 Plan are merely a conceptual framework for future planning, and as such, only one step in the general preparation process. Each step in the process does not by itself constitute a general plan.

Since the Phoenix Concept Plan 2000 and the Interim 1985 Plan are not general or specific plans, the "consistency" requirement of the statute has no application to the grant of the variance at issue herein. The trial court here was correct in its conclusion, but for the wrong reason.