457 P.2d 346

Maude COURSON et al., Appellants,

v.

The CITY OF TUCSON, a municipal
corporation, Appellee.

No. 2 CA–CIV 661.

Court of Appeals of Arizona.

July 17, 1969.

Rehearing Denied Sept. 5, 1969.
Review Denied Oct. 21, 1969.

Lesher, Scruggs, Rucker, Kimble &
Lindamood, by E. F. Rucker, Tucson, for
appellants.

Enos P. Schaffer, City Atty., Dwight E.
Eller, Asst. City Atty., Tucson, for appellee.

HATHAWAY, Judge.

The appellants sought injunctive relief
to restrain the City of Tucson from impos-
ing less restrictive zoning than B–1 against
their unimproved real property situated on
both sides of North Campbell Avenue, a
major thoroughfare, between Ft. Lowell
Road and Prince Road in the City of Tuc-
son. The intersection and vicinity at Camp-
bell and Ft. Lowell and Campbell and
Prince are used and classified as B–1
zoning. Appellants alleged that the lands
are of a business category and that the
single residence zoning classification im-
posed is discriminatory, arbitrary, unrea-
sonable and confiscatory in view of the
major thoroughfare upon which the land is
located, precluding its use but for business.
The City denied the allegations and the
matter was tried to the court sitting with-
out a jury. Judgment was entered against
the appellants supported by Findings of
Fact and Conclusions of Law.

The appellants assert that the, "sub-
stance of the appeal is that there is no
legal, substantial evidence to sustain the
Findings of Fact, that the findings of
fact are clearly erroneous, are incredible
and defy matters of common knowledge,
that the Conclusions of Law are contrary
to law and that the judgment should be re-
versed."

The following findings of fact are at-
tacked:

"IX That plaintiffs fail to prove by
clear and convincing evidence that pres-
ent R–1 zoning of subject property is
arbitrary, discriminatory, confiscatory or
unreasonable, and it is at most debatable
whether subject property can or cannot
be put to reasonable, economic, or suit-
able uses by R–1 zoned property.

"X That it was not established by the
evidence that original R–1 zoning upon
annexation in 1959 did not have a real
and substantial relationship to the public
health, safety, morals, or general wel-

fare, or was not a valid exercise of the police power, or was arbitrary, unreasonable or invalid.

"XI That there has been no showing of a substantial change of conditions of the area since original R-1 zoning to warrant a change of zoning to B-1 or to make any uses less than those permitted in B-1 commercial zones confiscatory, arbitrary, discriminatory, or unreasonable.

"XII That it has not been established that to deny B-1 zoning uses is discriminatory to subject property.

"XIII That the Mayor and Council, and the Planning and Zoning Commission gave consideration to zoning principles and criteria relative to Plaintiffs' request to rezone subject property to B-1 including: need for additional B-1 zoning, adverse effect of requested rezoning on the neighborhood, recent rezoning cases on part of subject property and in the area, change of conditions, and nature of the area.

"XIV The denial of rezoning subject property to B-1 had a real and substantial relation to public health, safety, morals and general welfare, and there was a reasonable basis for denying the change of zone requested."

■ To strike down the R-1 zoning classification the appellants must overcome the presumption of validity of the ordinance by showing that it is clearly and arbitrarily unreasonable, without any substantial relation to the public health, safety, morals, or general welfare. City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923 (1928); Rubi v. 49'er Country Club Estates, Inc., 7 Ariz.App. 408, 440 P.2d 44 (1968).

We have carefully reviewed the record and find that, in spite of the appellants' contentions that the findings are unsupported, the evidence is sharply conflicting. The appellants put on testimony that their properties would be more valuable under B-1

zoning and that the property was suitable for business and unsuitable for residential purposes in view of the heavy traffic along Campbell Avenue. A number of the appellants had admittedly acquired the property for purposes of speculation. Failure to realize the greatest value from the property is no basis for avoidance of a zoning statute. City of Tucson v. Arizona Mortuary, supra.

The appellants attribute the refusal of the City to rezone the property to B-1 to a commitment made by the City at the time of annexation, that the residential classification woud be retained. They quote from City Council minutes referring to argument by a councilman along that line. A newspaper article is also cited. These items certainly do not compel the conclusion argued for by appellants. See Watkins v. United States, 354 U.S. 178, 200, 77 S.Ct. 1173, 1186, 1 L.Ed.2d 1273 (1957), and cases cited in Footnote 34. In any event, nothing is established in the record which forbids the R-1 classification and so long as the ordinance is founded on some sound basis it will be upheld. Southwest Engineering Company v. Ernst, 79 Ariz. 403, 291 P.2d 764 (1955).

The City's denial of the requested rezoning is in line with the recommendation of the City Planning and Zoning Commission. The City's argument that the ordinance is reasonably founded is supported to a considerable extent by testimony from adjacent residents. A home was built in the district where the rezoning is sought in 1964 at the northeast corner of Lind and Campbell and continues to be occupied by the owner and his family, including three children. The City Planning and Zoning Director testified to the advantages of the avoidance of strip commercial zoning along major thoroughfares.

Other residents, who have lived adjacent to appellants' property for a number of years, are happy with the neighborhood and oppose a business zoning classification on the basis that it would tend to bring more

noise, traffic and commercial activities adjacent to their homes and generally devalue their properties and detract from the enjoyability of the neighborhood. Concerning the sufficiency of presently available business facilities, one resident testified that "there is every type of service that a homeowner would want right within the area perhaps just a short driving distance at most * * *." Evidence was also presented that certain of the available business properties were not being used. A convenience feature mentioned in reference to the residential use was its proximity to the downtown area for people employed there.

The appellants presented, through the testimony of a number of experts, opinions that the property was suitable for business and unsuitable for residential purposes. However, "to sustain an attack upon the validity of the ordinance an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions upon his property preclude its use for any purpose to which it is reasonably adapted." City of Phoenix v. Fehlner, 90 Ariz. 13, 363 P.2d 607 (1961), quoting from Arverne Bay Construction Company v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, 589, 117 A.L.R. 1110 (1938).

The properties appear reasonably adaptable to R–1 use. The size is ample, it would appear, even to include a frontage road should that be desirable. Financing is available for R–1 construction. Residents in the area testified to the desirability of the area as a residential neighborhood.

We are of the opinion that the findings of the trial court are reasonably supported in the evidence. It is not for us to pass upon the wisdom of the ordinance; so long as its reasonableness is fairly debatable, the only proper judicial function is to uphold it. Rubi v. 49'er Country Club Estates, Inc., supra.

Affirmed.

MOLLOY, C. J., and KRUCKER, J., concur.