459 P.2d 316

**J. B. KLENSIN and Helen C. Klensin, husband and wife, Appellants,**

v.

**The CITY OF TUCSON, a corporate body politic, Appellee.**

No. 2 CA–CIV 642.

Court of Appeals of Arizona.

Division 2.

Oct. 6, 1969.

Jacob B. Klensin, in pro. per.

Enos P. Schaffer, City Atty., Dino De-Concini, former City Atty., Barry M. Corey, Asst. City Atty., Tucson, for appellee.

HATHAWAY, Judge.

The Klensins sought a declaratory judgment that the existing R–3 zoning classification of their property situated on East Broadway, Tucson, Arizona, was unconstitutional as not being within the police power, and as being arbitrary, capricious, unreasonable and discriminatory. They also asked for a restraining order to prevent the defendant, City of Tucson, from interfering with their making commerical use of the subject property as permitted under B–1 zoning.

The cause was tried to the court sitting without a jury. Evidence was presented and the premises were viewed by the court. After the plaintiffs rested, the City moved for dismissal under Rule 41(b),. Rules of Civil Procedure, 16 A.R.S., which the court granted. The court adopted the amended findings of fact and conclusions of law submitted by the City.

The plaintiffs' property, located on the south side of Broadway between Swan Road and Craycroft Road, is a rectangular parcel—75 feet wide and 150 feet deep. A frontage road 25 feet wide separates the property from Broadway, with a curb separating the frontage road from Broadway, and an alley 20 feet wide runs along

the rear of the property. The frontage road can be entered from Niven Avenue, which is approximately 300 feet west of the subject property, or in front of the subject property where a cut in the curb exists. East of the property is a shopping center zoned B–1 with a business sign, "Pleasure Time," immediately adjacent to plaintiffs' property. The property across the alley at the rear is zoned R–1, and is occupied by persons living in single dwelling units. All property on the south side of Broadway between Swan and Craycroft is zoned residential with the exception of large corner lots at the intersections of Swan and Broadway and Rosemont and Broadway, which are zoned for commercial use.

The area in which the plaintiffs' property is located was annexed to the City on December 5, 1965. Prior to annexation it was zoned under the county equivalent to its present City classification. There has been much development along Broadway since, and a good deal of zoning reclassification has followed.

 Plaintiffs contend that the trial court was bound to view the evidence and inferences to be drawn therefrom most favorably to their position when considering the defendant's motion to dismiss under Rule 41(b), made after plaintiffs rested their case. Rule 41(b) provides in part:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)."

The rules seek an orderly, expeditious determination of lawsuits and:

"* * * it is certainly within their purpose that the court should have the power to dispose of the case at their first opportunity, and it is entirely appropriate that the court have the power to weigh the evidence, consider the law, and find for the defendant at the end of plaintiff's case." 5 Moore's Federal Practice § 41.13(4), pp. 1157–58 (2d ed. 1968).

The judge as trier of the facts in a trial without a jury may pass upon credibility and conflicts in the evidence and dismiss at the end of the plaintiffs' case if convinced against the plaintiffs, provided special findings are made. Joseph v. Tibsherany, 88 Ariz. 205, 354 P.2d 254 (1960); Lehman v. Whitehead, 1 Ariz.App. 355, 403 P.2d 8 (1965); Rule 41(b), Rules of Civil Procedure. In Markel v. Phoenix Title & Trust Company, 100 Ariz. 53, 410 P.2d 662 (1966), cited by plaintiffs, no findings of fact were made as required by Rule 41(b) and it was therefore required that the evidence be considered in the light most favorable to plaintiffs. Here, findings of fact were made by the trial court and we will view the record in the light most favorable to sustaining the trial judge. Joseph v. Tibsherany, supra.

Fourteen questions are presented for review. The majority of these are directed to the reasonableness of the zoning classification.

 The plaintiffs first contend that the character of Broadway has changed to such an extent that the present R–3 zoning for their property is not within the police power of the City and is unconstitutional. To prevail, they must show that the ordinance is clearly arbitrary and unreasonable, and that it does not have any substantial relation to the public health, safety, morals or general welfare. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A. L.R. 1016 (1926); City of Phoenix v. Burke, 9 Ariz.App. 395, 452 P.2d 722

(1969); City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923 (1928). The ordinance is presumed valid, and where the reasonableness of the ordinance is fairly debatable, the trial court must uphold its validity. Rubi v. 49'er Country Club Estates, Inc., 7 Ariz.App. 408, 440 P.2d 44 (1968); Courson v. City of Tucson, 10 Ariz.App. 159, 457 P.2d 346 (1969); City of Phoenix v. Fehlner, 90 Ariz. 13, 363 P.2d 607 (1961); Arverne Bay Construction Company v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, 117 A.L.R. 1110 (1938); Zahn v. Board of Public Works of City of Los Angeles, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074 (1927), and cases cited therein.

■ The plaintiffs have directed our attention to the increase in traffic on Broadway, the presence of a B–1 use adjacent to the property and to instances on Broadway of reclassification from residential to B–1. We agree there are reasons that can be given and arguments that can be made in favor of their position. In exercising our judicial function, however, the reasons supporting the Mayor and Council's refusal to reclassify the property to B–1 must be carefully considered.

A general purpose of zoning is to restrict uses to certain localities, "to bring about the orderly physical development of the community, to conserve, protect, or maintain the value of buildings or other property, and to put land to the use or uses to which it is best adapted, or the use which is most appropriate." 101 C.J.S. Zoning § 2. The preservation in the public interest of neighborhoods against uses considered deleterious to the neighborhood has been stated as a primary purpose. Kaplan v. City of Boston, 330 Mass. 381, 113 N.E.2d 856 (1953). Other purposes that have been designated are: to set aside areas for specific uses and to protect them from encroachment from other uses inconsistent with uses to which they are dedicated, Town of Hobart v. Collier, 3 Wis.2d 182, 87 N.W.2d 868 (1958); to furnish protection to residential neighborhoods which will

cause them to maintain themselves in a decent and sanitary way, Lewis v. District of Columbia, 89 U.S.App.D.C. 72, 190 F.2d 25 (1951); and to prevent invasion of business into residential section, Bicknell Realty Co. v. Board of Appeal of Boston, 330 Mass. 676, 116 N.E.2d 570 (1953).

■ Property owners may not "indiscriminately ignore the impact of their development on the properties adjacent to them." City of Phoenix v. Fehlner, supra. Uses permitted under B–1 classification include: automobile service stations, pool halls, retail stores, laundries, liquor stores, refreshment stands, and restaurants. Exposure of the contiguous residential properties to B–1 uses obviously opens the adjoining residential property to the disturbances naturally incidental to the heavier use. Zoning lines must be drawn somewhere to achieve the desired purpose. The location of residential property adjacent to property devoted to business uses will not of itself render the zoning line invalid. 101 C.J.S. Zoning § 57. Creeping zoning is not favored.

■ Plaintiffs suggest that the alley to the rear of their property serves as a buffer. However, it would seem that under some of the permitted B–1 uses the alley would likely be utilized for loading and unloading, for garbage collection, and other services more likely to create a zone of agitation. The trial court found:

"Subject property could have an adverse effect on adjacent R–1 single family residential properties to the rear as well as to the adjacent property to the west if put to B–1 uses and would be incompatible to such property."

Unwarranted reliance is placed by the plaintiffs on Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928), where a master made findings that the restriction imposed would not promote health, safety, convenience, and general welfare of the inhabitants of the part of the City affected. The case at bench is

distinguished by the trial court's findings favoring the ordinance. The findings are supported in the evidence and we assume reinforced in viewing the premises.

 It is contended that the gain to the public by the ordinance is so small when compared to the hardship imposed upon the individual property owner by the restrictions of the ordinance that no valid basis exists for the exercise of the police power. In weighing these competing interests the element of value is not controlling, but is persuasive in passing upon the validity of the ordinance. In this connection, Carlson v. City of Bellevue, 435 P.2d 957 (Wash. 1968), quoted by the plaintiffs on a different point, is illuminating. There, the property owner had been offered $60,000 for a filling station site, whereas the property was worth a little more than $2,500 for the purposes for which it had been sold. Although property may be worth more under different zoning, this is no basis for avoiding the effect of a zoning ordinance. To establish that an ordinance is confiscatory, it must be shown that the restrictions preclude use of the property for "any purpose to which it is reasonably established." Rubi v. 49'er Country Club Estates, Inc., 7 Ariz.App. 408, 440 P.2d 44 (1968); Courson v. City of Tucson, 10 Ariz.App. 159, 457 P.2d 346 (1969); City of Phoenix v. Fehlner, 90 Ariz. 13, 363 P.2d 607 (1961). The record before us indicates that the property may have been more valuable to the owner under a B–1 classification. However, the evidence shows that the property is reasonably adapted to the zoning classification given and continues its usefulness in that category. The fact that residential property immediately abutting a boundary line will be of less value than property more remote from the boundary of a commercial zone affords no justification for constant erosion of boundaries. Bolger v. Village of Mount Prospect, 10 Ill.2d 596, 141 N.E.2d 22 (1957).

 Zoning is to be accomplished in accordance with a comprehensive plan. Yokley Zoning Law and Practice (3d ed.) p.

124. Plaintiffs attack the ordinance contending that it was adopted to conform as nearly as possible to the existing county zoning classification and was not the result of any plan. It is argued that the various instances of zoning and rezoning Broadway for business and commercial purposes shows that the plan for Broadway is to develop a high-class business street. Failure to include the plaintiffs' property within that general plan is assailed as R–3 spot zoning and therefore invalid and unconstitutional.

We do not agree with this contention. Defendant's exhibit C, the general land use plan, shows that the subject property is zoned in accordance with that plan, providing for multi-residential and transitional purposes. The plan indicates an effort to avoid strip zoning of businesses along main arterial thoroughfares and thereby promote a freer traffic flow and minimize the hazards created by traffic entering and departing along the entire length of the thoroughfare.

 The plaintiffs complain that in granting B–3 zoning only a short distance from their property the City thereby gave the owners the right to build 14 stories compared to the maximum of two stories if B–1 zoning is granted the plaintiffs. They point out that 14-storied structures would be permitted in that area, whereas two stories is the maximum in B–1 zoning. We can only note that the particulars of the application and granting of the B–3 zoning are not before us and the mere granting of various types of zoning to various parcels along Broadway is no indication that a refusal to draft a requested classification is discriminatory. Findings of Fact Nos. 15 and 16 are indicative of the trial judge's thinking in this regard:

"15. The adjacent commercial property on the east has approximately 600-foot frontage and about 50% is now vacant land and unimproved and has remained unimproved since 1955 with no additional improvements since annexation thirteen years ago. Some of the

stores in this parcel are vacant and some are put to R–4 uses such as real estate offices.

"16. Subject property is distinguishable from adjacent B–1 zoned property to the east and is also distinguishable from other large or small size properties along Broadway which are zoned B–1 or were rezoned to B–1."

■ Our considerations must be limited to the reasonableness of the City governing body's action. The plaintiffs' equal protection argument would surely have merit if it were established that the plaintiffs were singled out and discriminated against to their detriment. We do not believe the record shows this to be the case.

■ Plaintiffs have well stated it, "it is not the function of a court to rezone property, but to determine at what point zoning restrictions become arbitrary." We must conclude from the overall record that the restrictions are reasonable and serve a beneficial public purpose. Also, it further appears that the plaintiffs' property is reasonably adaptable to the uses included within the zoning classification given it.

We have considered each of the plaintiffs objections to the findings of fact and conclusions of law. We find that the findings are supported by the evidence and the conclusions of law follow. We deem it unnecessary to set forth in detail the portions of the record supporting each finding. We do wish to comment, however, that the appellee failed to assist us by directing us to the portions of the record supporting the findings. Our work would have been facilitated and the disposition of this cause could have been expedited had appellee's counsel directed us to the portion of the record supporting the findings. This should have been a simple matter, considering the findings were prepared by that office.

The judgment is affirmed.

HOWARD and DONOFRIO, JJ., concur.