626 P.2d 132

**AZTEC FILM PRODUCTIONS, INC., an Arizona Corporation, Appellant,**

v.

**PRESCOTT VALLEY, INCORPORATED, an Arizona Corporation, Appellee.**

**No. 14696.**

Supreme Court of Arizona, In Division.

March 5, 1981.

Rabinovitz, Dix & Sands, P. C., by Charles G. Rehling, Bernard I. Rabinovitz, Tucson, for appellant.

Goldstein, Flynn & Mason, Ltd., by Philip T. Goldstein, Thomas C. Mason, Pamela L. Kingsley, Phoenix, for appellee.

CAMERON, Justice.

This is an appeal by plaintiff Aztec Film Productions, Inc. (Aztec) from the trial court's order to dismiss at the end of Aztec's case pursuant to Rule 41(b), Rules of Civil Procedure, 16 A.R.S., and the court's findings of fact and conclusions of law in favor of defendant-appellee Prescott Valley, Inc. (Prescott Valley). We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer only one question on appeal: Do the facts support the trial court's conclusion that Aztec failed to prove a breach of contract by Prescott Valley?

The facts necessary for a determination of this matter, viewed in a light most favorable to sustaining the trial court, *Klensin v. City of Tucson*, 10 Ariz.App. 399, 459 P.2d 316 (1969), are as follows. Aztec is an Arizona corporation engaged in the business of producing motion pictures for commercial users. Among the clients of Aztec are many land developers who use the films produced by Aztec as sales aids in marketing land to the public.

Prescott Valley, another Arizona corporation, is the developer of Prescott Valley Estates, Sierra Grande and Tombstone Territory Estates, and markets lots in these subdivisions to the public throughout the

United States. In conducting its business, Prescott Valley is obliged to comply with federal and state regulations concerning advertising and the sale of land.

In May 1974, an officer of Aztec contacted Prescott Valley concerning the production of a film which would be used to market its subdivision lots in other states. In late May 1974, Leonard Romero, an officer of Prescott Valley, verbally approved the synopsis entitled "Why Arizona" which outlined the concept of the film.

A letter of agreement dated 11 June 1974 was entered into between Aztec and Prescott Valley for production of the motion picture. Pursuant to the terms of the contract, Prescott Valley paid Aztec one-third ($6,250) of the total contract price ($18,750) upon the signing of the agreement. The agreement provided in part:

"The film to be produced under this agreement shall be completed within 90 days of the date that the shooting script is approved by Prescott Valley, Inc. Prescott Valley hereby agrees that said above approval shall be given expeditiously and not unreasonably withheld.

\* \* \* \* \* \*

"It is further agreed that Prescott Valley, Inc. has the right, if desired, to supervise completion of said motion picture including approval of the script, shooting schedule and answer print.

\* \* \* \* \* \*

"\* \* \* Prescott Valley, Inc. hereby agrees to indemnify fully and hold harmless Aztec, its employees, or representatives from any and all liability that may at any time arise out of the said truth or absence thereof of any statement or expression of fact contained in said film pursuant to the shooting script as approved by Prescott Valley, Inc."

In early June 1974, Aztec submitted a proposed shooting script to Prescott Valley, and in mid-July Aztec began shooting two to three thousand feet of film without the approval of the script by Prescott Valley.

On 1 August 1974, Prescott Valley returned the shooting script with comments indicating that it did not approve the script because some of the factual statements asserted in the script had not been documented in order to comply with the statutes and administrative regulations of the states in which Prescott Valley was marketing lots. Prescott Valley included with the critiqued script a handwritten note providing that "all facts must be from government sources."

Aztec's president, Ken Byrnes, responded by letter dated 7 August 1974 justifying the submitted script and chiding Prescott Valley for overreacting to the problem of government regulation. Byrnes wrote that many of the undocumented facts need not be supported because of "writer's license."

On 15 August 1974, Ken Byrnes, on behalf of Aztec, and Lionel Romero, on behalf of Prescott Valley, verbally agreed to allow Harlee Goldsteen, a real estate investigator for the State of Minnesota, to judge the reasonableness of Prescott Valley's disapproval of the script. Ms. Goldsteen returned the script on 30 August 1974 with her comments specifying that the script was unacceptable.

Aztec did not modify or revise the script after it was returned by Ms. Goldsteen. In mid-September 1974, Prescott Valley informed Aztec of its final disapproval of the shooting script and demanded the return of the $6,250 previously paid to Aztec.

Aztec brought suit against Prescott Valley for breach of the $18,750 contract seeking $25,000 in compensatory damages. Prescott Valley counterclaimed for the $6,250 paid under the contract. Trial was held before Judge Robert L. Myers sitting without a jury. At the close of Aztec's case, Judge Myers granted Prescott Valley's motion to dismiss. Judge Myers also granted Aztec's motion to dismiss Prescott Valley's counterclaim, thus allowing Aztec to retain the $6,250 paid under the contract. Findings of fact, conclusions of law and judgment were also filed. From the judgment and the findings, Aztec brought this appeal.

Our rules provide:

"* * * After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). * * * " Rule 41(b), Rules of Civil Procedure, 16 A.R.S.

And:

" * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. * * * " Rule 52(a), Rules of Civil Procedure, 16 A.R.S.; see *United Bank v. Mesa N.O. Nelson Co.,* 121 Ariz. 438, 590 P.2d 1384 (1979). See also *Rempt v. Borgeas,* 120 Ariz. 36, 583 P.2d 1356 (App.1978).

In the findings of fact and conclusions of law, the trial court found:

"2. That Plaintiff had the burden of proving:

(i) The existence of the contract;

(ii) Its breach; and

(iii) The resulting damages.

"The Plaintiff proved the existence of the contract but failed to demonstrate any breach thereof on the part of the Defendant. In addition, the Plaintiff failed to meet its burden of proof on the question of damages necessary to the making of a prima facie case."

Aztec asserts that the reason Prescott Valley refused to approve the script was not because of the undocumented facts in the script, but because Prescott Valley no longer had any use for the motion picture to be produced by Aztec. In other words, approval of the script was "unreasonably withheld" contrary to the agreement, and therefore the defendant breached the contract. In support of this contention, Aztec refers to Harlee Goldsteen's deposition. Ms. Goldsteen in the deposition stated that she had been approached in July 1974 by Prescott Valley and shown a slide presentation. She informed Prescott Valley that the slide presentation could not be shown as a sales aid in Minnesota. On 30 August 1974, when Ms. Goldsteen disapproved the script, she indicated that a motion picture concerning Tombstone Territory Estates would be acceptable for screening in Minnesota, but not for Sierra Grande or Prescott Valley.

From these facts Aztec argues that Prescott Valley knew in July 1974 that a film featuring all three subdivisions would be unacceptable for viewing in Minnesota, and that Prescott Valley's complaints about undocumented facts were merely a pretext for avoiding a contract Prescott Valley no longer wanted. We do not agree.

The evidence showed that Prescott Valley refused to approve the script because it wanted the facts documented to assure accuracy in order to comply with the law in the various states in which it marketed the Arizona lots. Even the president of Aztec, Ken Byrnes, admitted in his testimony that Prescott Valley's demands for accuracy with regard to the script were not unreasonable:

"Q And let me ask you this: Looking at [t]his exhibit, [the handwritten note], where it says that 'all facts must be from government sources. If not, list other sources and be certain if possible that these facts are accurate and credible.' This was not an unreasonable request, was it?

"A No, it was not.

* * * * * *

"Q And so as you look through [the script returned to Aztec by Prescott Valley], comments like comments need documentation, documented, documented, document all this. What is a price you can afford? Who said it was charming? Docu-

ment. What constitutes better locations? Documented proof. Documented proof. What is a reasonable cost? All of these in your judgment at that time were reasonable comments, were they not?

"A  I don't know.

"Q  You don't know?

"A  They were not unreasonable requests, but whether they were reasonable I can't argue that point."

From Ken Byrnes testimony that Prescott Valley's objections were "not unreasonable" as well as Ms. Goldsteen's rejection of the script, it is apparent that Prescott Valley's ground for non-performance of the contract was reasonable.

■ Aztec further argues, however, that the disapproval was unreasonable because Prescott Valley did not give Aztec an opportunity to revise the script. While the law is to the contrary, see 17A C.J.S. Contracts, § 495(1) at 722 (1963), we need not decide whether this rule is applicable as Aztec, in fact, had two opportunities to revise the script but did not do so. Rather than revising the script following the return of the script on 1 August 1974, Aztec, in its letter of 7 August 1974, disputed Prescott Valley's complaints even though it considered the complaints "not unreasonable requests." The evidence fully supports the trial court's finding (of fact 28) that:

"[Aztec] attempted to justify the previously submitted shooting script rather than modify or revise it in accordance with [Prescott Valley's] comments of disapproval expressed on August 1, 1974."

Following Ms. Goldsteen's rejection of the script on 30 August 1974, Aztec again failed to revise the script. As the trial court stated in finding of fact 35:

"That at no time subsequent to August 30, 1974, did [Aztec] ever submit a revised shooting script to [Prescott Valley] or otherwise make any changes in the shooting script which was submitted to Ms. Goldstein [Goldsteen]."

We find no error.

■ Finally, Aztec asserts that the trial court, in determining that there was no breach of contract by Prescott Valley, improperly applied a subjective test of personal satisfaction rather than the objective test, that the script would have satisfied a reasonable person in Prescott Valley's position. We agree that the objective test was the proper test to apply:

"A promise in terms conditional on the promisor's satisfaction with an agreed exchange, gives rise to no duty of immediate performance until such satisfaction; but where it is doubtful whether words mean that a promise is conditional on the promisor's personal satisfaction with an agreed exchange, or on the sufficiency of that exchange to satisfy a reasonable man in the promisor's position, the latter interpretation is adopted." Restatement of Contracts, § 265 (1932); see *Ard Dr. Pepper Bottling Co. v. Dr. Pepper Co.,* 202 F.2d 372 (5th Cir. 1953); *Haymore v. Levinson,* 8 Utah 2d 66, 328 P.2d 307 (1958).

In the present case, the contract provided that "approval shall be given expeditiously and not unreasonably withheld." This unreasonableness provision required Prescott Valley to be objectively dissatisfied with the shooting script. The facts support a conclusion that under the objective test of reasonableness, Prescott Valley's withholding of approval of the script was not unreasonable. We find no error.

Aztec also contends that the facts do not support the trial court's conclusion that Aztec failed to meet its burden on the proof of damages. Since we have determined that there was no breach of the contract by Prescott Valley, we need not consider damages for such breach.

We note that Prescott Valley did not appeal so we are not concerned with the propriety of the dismissal of Prescott Valley's counterclaim for the amount paid on the contract.

Judgment affirmed.

HOLOHAN, V. C. J., and HAYS, J., concur.