975 P.2d 704

**In the Matter of the ESTATE OF: Benjamin POUSER, Deceased.**

**Amy Pouser–Webb, Harold Pouser, and Richard Pouser, Plaintiffs–Appellants,**

v.

**Suzanne Pouser, individually; Suzanne Pouser and Thomas S. Filip as Personal Representatives of the Estate of Benjamin Pouser, Deceased; and the Estate of Benjamin Pouser, Deceased, Defendants-Appellees.**

**No. CV–97–0407–PR.**

Supreme Court of Arizona, En Banc.

April 8, 1999.

the "one final judgment" rule, see 10 James Wm. Moore et al., *Moore's Federal Practice* §§ 54.25[2] and 54.27[2][c] (3d ed.1997).

**576**

Chalpin & Tom, Ltd. By Mitchell A. Chalpin and Rick Kilfoy Phoenix Attorneys for Petitioners/Appellants.

Meyer, Hendricks, Bivens & Moyes, P.A. By Don Bivens and Viet V. Le Phoenix and Osborn & Maledon By Debra A. Hill Phoenix Attorneys for Respondents/Appellees.

## OPINION

HOWARD, Judge.

¶ 1 After a trial to the court, the trial judge found that decedent Benjamin Pouser had intended that appellee Suzanne Pouser, Benjamin's second wife, inherit the maximum amount allowable under the federal estate tax marital deduction in effect at the time of his death and that Suzanne was therefore entitled to Benjamin's entire estate, to the exclusion of appellants Richard Pouser, Harold Pouser, and Amy Pouser Webb, Benjamin's children by a previous marriage.[1] The court of appeals reversed the judgment, ruling that the trial court's findings as to Benjamin's intent were clearly erroneous. We granted Suzanne and appellee Thomas Filip's petition for review and now vacate the court of appeals' decision and reinstate the trial court's judgment because we conclude the trial court's finding of Benjamin's intent was supported by substantial evidence.

## FACTS

¶ 2 We view the facts in the light most favorable to supporting the trial court's judgment. *Aztec Film Productions, Inc. v. Prescott Valley, Inc.*, 128 Ariz. 402, 403, 626 P.2d 132, 133 (1981). Benjamin had substantial assets when he and Suzanne married in 1959. They executed a prenuptial agreement, keeping their property interests separate and providing that Suzanne would inherit nothing when Benjamin died. In 1974, when Benjamin's estate was worth over one million dollars, he executed a will that left $50,000 to Suzanne and the remainder in trust for appellants. In 1976, after Benjamin retired and his health failed, he and Suzanne revoked the prenuptial agreement and executed mutual wills. Benjamin's will provided for a maximum marital deduction trust for Suzanne and residuary trusts for appellants. Suzanne's will left her estate to Benjamin if

---

1. The trial court also ruled in favor of Suzanne and her copersonal representative, appellee Thomas Filip, on appellants' allegations of breach of fiduciary duty and confidential relationships. Although we also granted review of the court of appeals' reversal on these issues, we need not reach these issues because we reinstate the trial court's judgment on the distribution of the estate.

she predeceased him or, contingently, to appellants. She later amended her will, excluding appellants.

¶ 3 When Benjamin died in 1993, he was survived by Suzanne and appellants. Pursuant to Benjamin's will, the court appointed Suzanne and her nephew, appellee Filip, as personal representatives of Benjamin's estate. They interpreted Benjamin's will as devising his entire estate to Suzanne's marital trust, thereby utilizing the unlimited federal estate tax marital deduction then in effect and, due to Suzanne's amended will, effectively disinheriting appellants.

¶ 4 Appellants filed a petition to construe the will, asserting that the maximum marital deduction in effect at the time Benjamin executed his will allowed Suzanne to receive a maximum of $250,000 from his estate.[2] The trial judge held a trial to the court, considered extrinsic evidence, and ruled in favor of Suzanne.

### BENJAMIN'S WILL

¶ 5 The Third paragraph of Benjamin's will provided that the marital trust was to be funded with "an amount of property equal to the maximum marital deduction allowable in determining the Federal Estate Tax imposed upon my estate under the Internal Revenue Code of 1954, or such similar provisions under any revenue act that may be in effect at the time of my death. . . ." It further stated:

> It is my object to secure the full benefit of the maximum marital deduction allowable for Federal Estate Tax purposes under the Federal Estate Tax law in effect upon my death. Accordingly, the terms of this will shall be construed to fulfill this objective. Any provision of this Will which may conflict with my said objective shall be reconciled or ignored to the end that the full marital deduction may be allowed with respect to my estate.

Appellants' trust was to be funded with the residue "remaining after the funding of the SUZANNE POUSER MARITAL TRUST."

2. Appellant's petition does not mention a marital deduction of one-half of the estate. *See* I.R.C. 2056(c) (1976) (increasing marital deduction

¶ 6 The devolution of Benjamin's estate is controlled by state law, which looks to his intent, A.R.S. § 14–1102(B)(2); *In re Estate of Krokowsky,* 182 Ariz. 277, 280, 896 P.2d 247, 250 (1995), as opposed to the technical application of federal tax law. *See In re Estate of Arend,* 373 N.W.2d 338, 344 (Minn. App.1985). Because Benjamin's will specifically referred to the federal tax law, however, we must first determine the "maximum marital deduction" in the context of applicable federal tax law and then determine if the trial court's finding that Benjamin intended to bequeath his entire estate to Suzanne under an unlimited marital deduction was clearly erroneous.

### TRANSITIONAL RULE

¶ 7 In 1976, the marital deduction was increased to the greater of $250,000 or one-half the estate. I.R.C. § 2056(c) (1976). The Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 172 (1981) (the ERTA) further amended § 2056 to provide for an unlimited marital deduction. ERTA § 403(a). Recognizing that the ERTA might have an unintended impact on existing wills, Congress provided a transitional rule, ERTA § 403(e)(3), which states that the limited pre-ERTA deduction will still apply if:

> (A) the decedent dies after December 31, 1981,
>
> (B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of [the ERTA], or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,
>
> (C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time after the date which is 30 days after the date of enactment of [the ERTA], and before the death of the decedent. . . .

from one-half of the estate to the greater of $250,000 or one-half the estate).

The Senate report explained the rule as follows:

> The committee is concerned that many testators; although using the formula clause, may not have wanted to pass more than the greater of $250,000 or one-half of the adjusted gross estate (recognizing the prior law limitation) to the spouse. For this reason, a transitional rule provides that the increased estate tax marital deduction, as provided by the bill, will not apply to transfers resulting from a will executed ... before the date which is 30 days after enactment, which contains a maximum marital deduction clause....

S.Rep. No. 97–144, at 128 (1981), *reprinted in* 1981 U.S.C.C.A.N. 105, 229. Although the transitional rule speaks in absolute terms, the courts interpreting it, relying on its stated purpose, have held that it will not be applied to defeat the intent of the testator. *See Liberty Nat'l Bank & Trust v. United States*, 867 F.2d 302, 304 (6th Cir.1989); *Estate of Bruning v. Comm'r*, 888 F.2d 657, 659 (10th Cir.1989); *Unborn Beneficiaries of Kreigh Family Trust v. Kreigh*, 554 N.E.2d 1167, 1168 (Ind.App.1990); *Arend*, 373 N.W.2d at 344; *In re Will of Hickok*, 140 Misc.2d 650, 530 N.Y.S.2d 983, 986 (Sur.Ct. 1988).

¶8　One expression of intent is a directive in a will that the maximum marital deduction in effect at the time of the testator's death apply to the estate. The Internal Revenue Service (IRS) has determined that the transitional rule does not apply when the terms of a will indicate that subsequent changes in the federal estate tax law on the marital deduction should apply to the estate. *See* Rev. Rul. 80–148, 1980–1 C.B. 207.[3] *See also* Randall J. Gingiss, *When Does the Unlimited Marital Deduction Apply to Pre–ERTA Wills?*, 16 Est. Plan. 148 (1989) (IRS private letter rulings indicate that transitional rule will not apply when will contains language

indicating that changes in the marital deduction were to apply to the estate).

■　¶9　Similarly, courts have recognized that a will which specifically refers to the marital deduction in effect at the time of the decedent's death is not governed by the transitional rule. *Kreigh*, 554 N.E.2d at 1168; *see Liberty Nat'l Bank*, 867 F.2d at 304 (transitional rule applied when "no specific language in decedent's will that he intended the marital bequest to change if federal tax law changed"). *But see Arend*, 373 N.W.2d at 344; *Hickok*, 530 N.Y.S.2d at 985–86. The rationale for refusing to apply the transitional rule when the will refers to the marital deduction in effect at the time of the testator's death is that, because the testator has contemplated the possibility that the marital deduction may change and has specifically mandated that the amendments control, applying the transitional rule is not necessary and would actually defeat the testator's intent. *See Kreigh*, 554 N.E.2d at 1168. Under the transitional rule, therefore, just as under Arizona case law, the testator's intent is controlling.

## INTERPRETING WILLS

■　¶10　In attempting to ascertain the testator's intent, we consider the text of the will as a whole and, when appropriate, the circumstances at the time it was executed. *In re Estate of Smith*, 119 Ariz. 293, 295, 580 P.2d 754, 756 (App.1978). A will is ambiguous when "the written language is fairly susceptible of two or more constructions," *Smith*, 119 Ariz. at 296, 580 P.2d at 757, the same standard applicable to other documents. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154–55, 854 P.2d 1134, 1140–41 (1993). A latent ambiguity does not appear on the face of the will but appears when considering extrinsic evidence.

---

3.　Although this revenue ruling dealt with a transitional rule under the 1976 Tax Reform Act, the language of the 1976 transitional rule and the House explanatory report were virtually identical to the rule and Senate report here, *see* Rev. Rul. 80–148, 1980–1 C.B. 207, and the IRS has subsequently applied this revenue ruling to the ERTA transitional rule as well. *See* Priv. Ltr. Rul. 9245021 (Nov. 6, 1992); Priv. Ltr. Rul. 9231012

(July 31, 1992); Tech. Adv. Mem. 9217008 (April 24, 1992); Tech. Adv. Mem. 9114004 (April 5, 1991). *See generally United States v. Wisconsin Power & Light Co.*, 38 F.3d 329, 335 (7th Cir. 1994) (although they cannot be cited as precedent, court cited private letter rulings and technical advice memoranda as "evidence of administrative practice").

*In re Estate of Shields,* 84 Ariz. 330, 331, 327 P.2d 1009, 1010 (1958). If the language of the will is reasonably susceptible to two interpretations, we may consider extrinsic evidence to ascertain the testator's intent. *Smith,* 119 Ariz. at 295–96, 580 P.2d at 756–57. Extrinsic evidence is not, however, admissible to contradict the plain language of the will. *Hill v. Hill,* 37 Ariz. 406, 410, 294 P. 831, 833 (1931). If extrinsic evidence is admissible, interpreting the will generally becomes a question of fact. *In re Estate of Black,* 211 Cal.App.2d 75, 27 Cal.Rptr. 418, 427 (1962). *See Taylor,* 175 Ariz. at 159, 854 P.2d at 1145; *United California Bank v. Prudential Ins. Co. of America,* 140 Ariz. 238, 260, 681 P.2d 390, 412 (App.1983) ("[A]ny ambiguity in ... documents is subject to a factual determination concerning ... intent ... and is to be resolved conclusively by the trier of fact.").

### IMPLEMENTATION OF THE TRANSITIONAL RULE

■ ¶ 11 *Kreigh* and the IRS interpret time-of-death marital deduction provisions as preventing application of the transitional rule as a matter of law. *See also Liberty Nat'l Bank,* 867 F.2d at 305. Although we agree with the underlying rationale of these authorities, allowing these provisions to control the distribution of the estate as a matter of law could, in some cases, conflict with the primary goal in construing wills: ascertaining the testator's intent. *See Krokowsky,* 182 Ariz. at 280, 896 P.2d at 250. If the will is reasonably susceptible to two interpretations, that goal is better served by determining the testator's intent as a question of fact. *See In re Estate of Black,* 27 Cal.Rptr. at 427; *Taylor,* 175 Ariz. at 159, 854 P.2d at 1145; *United California Bank,* 140 Ariz. at 260, 681 P.2d at 412.

■ ¶ 12 Questions of fact, however, may be subject to presumptions which shift the burden of going forward with evidence. *In re Hesse's Estate,* 62 Ariz. 273, 282, 157 P.2d 347, 351 (1945). A presumption that a testator who includes a time-of-death marital deduction provision in his will intends the current unlimited marital deduction to apply would keep our application of the transitional rule fundamentally consistent with the federal authority on that federal rule and would properly focus on the will's language as the most reliable expression of the testator's intent. *See In re Estate of Johnson,* 168 Ariz. 108, 110, 811 P.2d 360, 362 (App.1991). It does not, however, prevent the court from finding a different intent based upon competent evidence. We, therefore, adopt the presumption and, in the presence of a time-of-death marital deduction provision, we will apply the unlimited marital deduction absent evidence rebutting the presumption.

### BENJAMIN'S INTENT

■ ¶ 13 Benjamin's will became reasonably susceptible to two interpretations upon passage of the ERTA with the transitional rule. *See Arend,* 373 N.W.2d at 342. The trial court thus properly admitted extrinsic evidence to resolve this question of fact. *See Smith,* 119 Ariz. at 295–96, 580 P.2d at 756–57; *Taylor,* 175 Ariz. at 154, 854 P.2d at 1140. *See also Arend,* 373 N.W.2d at 342. In reviewing a trial court's findings of fact, we do not reweigh conflicting evidence or redetermine the preponderance of the evidence, but examine the record only to determine whether substantial evidence exists to support the trial court's action. *Whittemore v. Amator,* 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986). Substantial evidence is evidence which would permit a reasonable person to reach the trial court's result. *Hutcherson v. City of Phoenix,* 192 Ariz. 51, ¶ 13, 961 P.2d 449, ¶ 13 (1998).

■ ¶ 14 The trial court relied on the provisions in the Third paragraph of Benjamin's will, which emphasized that Benjamin's primary intent was to maximize the marital deduction and specifically required that the marital deduction in effect at the time of his death apply to his estate. Although the initial presumption we have established in favor of the unlimited marital deduction applies here because of the time-of-death marital deduction directive in Benjamin's will, the trial court received evidence concerning Benjamin's disinherited heirs and concerning the notes and standard drafting practices of the attorney who drafted the will. This evidence

contradicts the presumption and supports the appellants' position that Benjamin only intended to devise Suzanne an amount equal to the prior limited marital deduction. We will, therefore, also examine, in addition to the directive, the other evidence supporting the trial court's finding.

¶ 15 As the trial court noted, other provisions of Benjamin's will demonstrated his intent to place Suzanne's interests ahead of the remainder interests: the survival clause established a conclusive presumption that Suzanne survived Benjamin, and the tax clause required that the residuary estate bear all estate taxes and expenses and that the marital trust bear none. The trial court also found "credible and compelling" the testimony of Louis Comus, an attorney who testified as an expert witness on the application of the transitional rule. Because construction of the will required an analysis of a complex federal estate tax question, the trial court properly received expert testimony. Ariz. R. Evid. 702, 17A A.R.S; *see In re Estate of Lenahan,* 511 So.2d 365, 371 (Fla. Dist.Ct.App.1987). *See generally In re Estate of Verdisson,* 4 Cal.App.4th 1127, 6 Cal. Rptr.2d 363, 366 (1992). Comus testified that Benjamin was "clearly trying to get the maximum tax benefit from th[e] provision [creating Suzanne's trust]." He further testified that, given the language of the will, he could not think of "any reasons ... why the unlimited marital deduction should not apply to this will." Additionally, the trial court relied on the testimony of Filip and Peter Carlucci, which indicated that Benjamin understood and accepted that the ERTA would permit Suzanne to inherit his entire estate, as well as the testimony of Phyllis Starr, which indicated that Benjamin intended to disinherit appellants. This evidence further supports the trial court's conclusion that, when executing his will, he intended that any changes in the marital deduction, and even an unlimited marital deduction, apply to his estate. *See Danelczyk v. Tynek,* 260 N.J.Super. 426, 616 A.2d 1311, 1313 (App.Div.1992) (statements of testator's intent admissible to explain ambiguity); *see also* Ariz. R. Evid. 803(3) (statement of memory or belief not hearsay if it relates to "the execution, revocation, identification, or terms of declarant's

will"); 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 441 (2d ed.1994).

¶ 16 Finally, as the dissent in the court of appeals points out, the pattern of conduct between Suzanne and Benjamin further supports the trial court's finding. After entering a prenuptial agreement to keep their estates separate and to provide nothing for Suzanne upon Benjamin's death, Benjamin later executed a will giving Suzanne $50,000 and finally revoked the prenuptial agreement and executed the will at issue giving Suzanne the maximum marital deduction trust.

¶ 17 The trial court's conclusion does not render the provisions concerning appellants' trust or any other provision of the will meaningless. If Suzanne had died first, or if the marital deduction had not become unlimited, these provisions would have taken effect and were vital to creating a complete estate plan. Even if they had been rendered meaningless, however, Benjamin expressly directed that any provision that conflicted with maximizing the marital deduction be "reconciled or ignored."

¶ 18 Substantial evidence supported the trial court's finding of Benjamin's intent, and despite conflicting evidence the court made no clear error. *Whittemore,* 148 Ariz. at 175, 713 P.2d at 1233 (appellate court will not reweigh preponderance of the evidence); *Moore v. Title Ins. Co. of Minnesota,* 148 Ariz. 408, 413, 714 P.2d 1303, 1308 (App.1985) (finding of fact not "clearly erroneous" if substantial evidence supports it, even in presence of substantial conflicting evidence). The court of appeals, therefore, erred in reversing the trial court's judgment.

¶ 19 Although appellants have attempted to distinguish factually some transitional rule decisions and have relied on others, we believe our conclusion is in basic harmony with these decisions. Appellate courts have generally affirmed the trial courts' findings of the testator's intent when they are supported by substantial evidence, whether the trial court applied the unlimited marital deduction, *Bruning; Kreigh,* or the marital deduction in effect at the time of the execution of the will. *Arend; Liberty Nat'l Bank; In re*

*Hickock,* 158 A.D.2d 690, 552 N.Y.S.2d 49 (1990).

¶ 20 Because substantial evidence supports the trial court's finding, under state probate law or federal tax law, that Benjamin's intent was to take advantage of the unlimited marital deduction in effect at the time of his death, we vacate the court of appeals' opinion and reinstate the trial court's judgment.

THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice and FREDERICK J. MARTONE, Justice, concur.

Justice RUTH V. MCGREGOR did not participate in the determination of this matter; pursuant to Ariz. Const. art. VI, § 3, the Honorable JOSEPH W. HOWARD, Judge of the Arizona Court of Appeals, Div. Two, was designated to sit in her stead.