NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the Estate of:

ANDREA KRISTINE KELAND aka ANDREA KRISTINE KELAND
MOORE, *Deceased.*

KAREN HENRIETTA KELAND, *Appellant*,

*v.*

ALBERT LEE MOORE III, as Personal Representative of the ESTATE OF
ANDREA KRISTINE KELAND, *Appellee.*

No. 1 CA-CV 13-0605
FILED 10-14-2014

Appeal from the Superior Court in Yavapai County
No. P1300PB20080041
The Honorable Kenton D. Jones, Judge

**AFFIRMED**

COUNSEL

Levin Schreder & Carey, Ltd., Chicago
By David E. Lieberman

Kottke Law Firm, PLC, Prescott
By Christopher L. Kottke

Tiffany & Bosco, PA, Phoenix
By James A. Fassold, Natalya Ter-Grigoryan
*Co-counsel for Appellant*

Prescott Law Group, PLC, Prescott
By J. Andrew Jolley, Lindsay H. F. Odell
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

**H O W E**, Judge:

**¶1**        Karen Henrietta Keland ("Henni") appeals the superior court's decision to close the estate of her deceased sister, Andrea Kristine Keland ("Kristi"). Henni claims that Kristi bequeathed to her certain Native American baskets and artwork that had been in the Arizona ranch that Kristi shared with her husband, Albert Lee Moore III ("Tres"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Kristi and Tres lived on an Arizona ranch owned by Indian Rock Land & Cattle, LLC ("Indian Rock"), which the couple controlled. When Kristi died in December 2007, she left a $54 million estate, and Tres was appointed personal representative. Kristi's will bequeathed her personal property to her sisters:

> All my jewelry, pictures, books, house furniture and furnishings, clothing, automobiles and articles of household or personal use or ornament of all kinds not effectively disposed of by the above provisions to . . . my sisters,

Katherine Nikolina Keland and [Henni] . . . to be divided equally as they decide.[1]

¶3        Attorney Tom Abendroth represented Kristi during her life, represented Tres after Kristi's death, and represented Johnson Bank—trustee of the Andrea Kristine Keland Trust ("the trust"). In early 2008, Abendroth met with Tres and Henni to discuss the distribution of Kristi's personal property. According to Abendroth, Tres and Henni agreed to work together to distribute Kristi's personal property.

¶4        In summer 2008, Henni and Tres visited the ranch so that Henni could select personal property that she wanted. Abendroth sent a letter to Tres, stating that Henni would disclaim all of Kristi's personal property except certain artwork, jewelry, and a few collectibles, and that the remainder would pass to the trust.

¶5        In July and August 2008, Abendroth requested that Henni provide descriptions of the personal property taken from the estate and disclaim her interest in the remaining items. Abendroth wrote to Tres's attorney in September 2008, expressing his understanding that Henni had not fully disclaimed Kristi's personal property and that Henni wanted additional items. He asserted that they needed to identify jointly owned property and property Tres owned.  In January 2009, Tres wrote to Johnson Bank, explaining how he viewed—and would treat—the personal property, unless someone objected. The letter stated:

> The furniture and other personal belongings that Kristi purchased for our home (including the woven baskets and other Native American art) were purchased for both of us, and are joint property. Kristi sometimes referred to the baskets as a back-up retirement fund:  if other income dried up, we could sell the baskets, or I could sell the baskets if I survived her, to pay for living expenses.

In February 2009, Abendroth again sent Henni a letter asking that she disclaim her interest in Kristi's personal property.

---

1        The original bequest included Kristi's brother. Kristi subsequently removed her brother as a beneficiary under the will. Kristi's sister, Katherine N. Keland, disclaimed her interest in the bequest.

¶6        On October 28, 2009, Henni wrote to Abendroth, Johnson Bank, and Johnson Keland Management, Inc. ("the family office")[2], stating that she had retained counsel to help administer Kristi's estate. She requested estate-related information, including the estate documents, appraisals, certificates of insurance, tax returns, inventories, and accountings.

¶7        In January 2010, Henni's attorney wrote to Abendroth that Kristi's tangible personal property should be distributed solely to Henni pursuant to Kristi's estate documents and her premarital agreement with Tres.[3] Henni's attorney also demanded delivery of all of the Native American baskets to Henni's Chicago residence. In July 2010, Abendroth sent Henni's attorney a document showing that Indian Rock maintained an insurance policy for household personal property in the Arizona ranch.

¶8        On May 10, 2011, Tres petitioned to approve the first and final accounting for Kristi's estate. Henni objected, arguing that pursuant to Kristi's will, she was entitled to all of Kristi's personal property located at the Arizona ranch. Henni contended that Kristi had purchased the household property with her individual funds and, pursuant to a premarital agreement, the property therefore remained her individual property. Henni asserted that Tres had misappropriated to himself the household items and the collection of Native American baskets and artwork.

¶9        The court conducted a two-day evidentiary hearing to determine whether Indian Rock or Kristi owned the baskets. Henni testified that Kristi had told her that she was leaving her personal belongings to Henni and that Abendroth confirmed that she had inherited the personal property. Henni acknowledged that she did not know who owned the personal possessions in the Arizona ranch and that she knew nothing about Indian Rock.

---

[2]        Johnson Keland Management, Inc. provides financial and other services to members of the Johnson and Keland families, who own the company.

[3]        The premarital agreement provided that joint property with right of survivorship would become the property of the survivor in the event one of the spouses died, but that "[t]he interest of the decedent in all other Joint Property will be administered, descend and be distributed as if the survivor predeceased the decedent."

¶10 Abendroth testified that Indian Rock owned the baskets because the casualty insurance policies covered household items. Abendroth testified that Tres produced the insurance policy in response to his questions regarding ownership and that upon receiving the policy he verified that the policy was in effect when Kristi died. He also noted that nothing else existed to establish ownership.

¶11 Tres testified that he believed the personal property belonged to him because the items were in the home that he shared with Kristi, Indian Rock owned the ranch, and Indian Rock became his when Kristi died. Tres also testified that the insurance policy resulted from discussions with his insurance agent. Finally, he testified that he and Kristi had collected the baskets both together and separately, and that Indian Rock may have purchased some through its own checking account.

¶12 Without entering findings of fact and conclusions of law, the superior court entered judgment in favor of the estate and the personal representative, denied Henni's objections, approved the final accounting, and closed the estate. The court denied Tres's request for attorneys' fees under Arizona Revised Statutes ("A.R.S.") section 12-349 and section 14-1105.

## DISCUSSION

¶13 Henni argues that the superior court erred in approving Tres's distribution of the estate because evidence indicating that Indian Rock insured the baskets was insufficient to support the court's finding that Indian Rock owned the items. We view the evidence in the light most favorable to upholding the superior court's judgment, *In re Estate of Pouser*, 193 Ariz. 574, 576 ¶ 2, 975 P.2d 704, 706 (1999), and will affirm if any evidence supports the judgment, *Inch v. McPherson*, 176 Ariz. 132, 136, 859 P.2d 755, 759 (App. 1992). We do not reweigh the evidence, but determine only if the record contains evidence from which a reasonable person could reach the same result as the superior court. *Pouser*, 193 Ariz. at 579 ¶ 13, 975 P.2d at 709.

¶14 The insurance document and Tres's testimony provide sufficient evidence to support the superior court's finding that Indian Rock owned the baskets. Tres presented an insurance document from Farm Bureau Financial Services as evidence that Indian Rock owned the personal

property at the Arizona ranch.[4] The insurance document contained a cover letter, which referenced "policy number 7618783 Indian Rock And Cattle LLC," identified the policy as being for home, auto, and ranch, and noted that the policy was effective April 20, 2007, expired April 20, 2010, and had experienced no lapses. For each dwelling on the ranch, the policy listed coverage for "Household Personal Property" in amounts ranging from $56,850 to $235,850. Tres testified that he had told the insurance agent to insure the Indian baskets. He also testified that, except for the baskets, no personal property on the premises was worth the amount of policy coverage. In addition, Tres testified that he and Kristi collected the baskets together, that they each purchased some of the baskets, and that Indian Rock may have purchased some of the baskets.

¶15        Henni argues that the insurance document is not evidence that Indian Rock owned the baskets because the insurance document is merely an application form pertaining to a policy effective April 20, 2009, sixteen months after Kristi died. Henni bases this argument on a stated effective date of April 20, 2009, that appears under "General Policy Information" within the insurance document. The attached cover letter, however, explains that the policy became effective on April 20, 2007—before Kristi's death—and that no lapse in coverage had occurred. In addition, Tres testified that he and Kristi had switched insurance companies in 2007, that he had met with the agent, and that the document reflected what he told the agent he wanted in the policy. He further testified

---

[4]        Henni complains in passing, without argument or authority, that the superior court erred in admitting the document because it had not authenticated the document under Arizona Rule of Evidence 901. Henni's failure to present any substantive argument or authority on the issue has waived any argument on the document's admissibility. *See Sulpher Springs Valley Elec. Coop., Inc. v. Verdugo*, 14 Ariz. App. 141, 145, 481 P.2d 511, 515 (1971) (finding that issue deemed abandoned where presented for review but not supported by arguments or authorities). In any event, Rule 901 permits authentication by testimony from a witness with knowledge that an item is what is claimed. Ariz. R. Evid. 901(b)(1). Tres testified that when he established the policy, he had met with the insurance agent and explained to the agent why he wanted the policy and that the admitted exhibit was the resulting policy. Abendroth testified that the document was what the insurer had provided in response to their request for information on the policy when Kristi died. The court did not clearly abuse its discretion in admitting the document. *See Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996) (holding that court's ruling on admissibility of evidence reviewed for clear abuse of discretion).

that the policy never expired and was renewed annually and that he could not recall if he ever changed the terms of the policy. Accordingly, the policy outlined in the exhibit was effective when Kristi died.

**¶16**　　　Henni further asserts that the federal estate tax return that Tres and Abendroth signed demonstrated that Indian Rock did not own the baskets. The tax return listed the baskets as jointly owned property and described Indian Rock as having a sole asset of land and improvements. The tax return, however, was prepared in March 2009, before the nature of the dispute over the baskets was known and before any need arose to establish ownership of that property. Abendroth received the insurance document in early 2010, so when the tax return was prepared, Abendroth did not yet have the information that Indian Rock insured the baskets, which led him to subsequently conclude that Indian Rock owned the personal items. The tax return therefore does not disprove that Indian Rock owned the baskets.

**¶17**　　　Henni also asserts that Tres and Abendroth made repeated admissions that the baskets belonged to Kristi. Henni points to letters that refer to "Kristi's woven basket collection," and "Kristi's Native American Western Art." Even if these statements could be construed as admissions, they, like the tax return, were made before autumn 2009 and therefore before the inquiry regarding ownership that produced the information that Indian Rock insured the baskets. Although Tres testified that he had directed the insurance agent to include the baskets in the policy, which would suggest he should have known that Indian Rock owned them, a non-lawyer like Tres was unlikely to have distinguished between ownership by himself and Kristi, and ownership by Indian Rock, which they owned together.

**¶18**　　　Henni further argues that the Petition for Approval of Accounting filed after receipt of the insurance documents constitutes an admission that the baskets belonged to Kristi. That document includes in its list of "assets of Deceased Person's Estate," "Furniture and Household Items Located in residence held by [Indian Rock], Prescott, AZ - ½ interest," and "Collection of American Indian baskets and artwork Located in residence held by [Indian Rock] - ½ interest." Henni argues that the baskets would not have been listed in that fashion if Indian Rock owned them. Abendroth, however, testified that he and local counsel decided to include the personal property in the itemization of assets even though Indian Rock owned them because Henni had hired a lawyer to dispute the disposition of those items and they wanted to put them before the court.

¶19 Henni's arguments do not invalidate the insurance document's evidentiary value. Moreover, Henni presented no evidence to show that anyone other than Indian Rock owned the baskets. Once Tres presented a prima facie case that his treatment of the estate was appropriate, Henni had the burden to present contradictory evidence. *See Lefkowitz v. Arizona Trust Co.*, 10 Ariz. App. 415, 420, 459 P.2d 332, 337 (1969) (holding that when an estate distribution is challenged, the estate's representative bears the burden of presenting a prima facie case that his action was proper, after which the burden rests with the objector to present contradictory evidence). That contrary evidence is lacking here.

¶20 Viewed in the light most favorable to supporting the superior court's verdict, the insurance document and Tres's testimony constitute sufficient evidence to prove that Indian Rock owned the baskets. The inclusion of the household personal property on Indian Rock's insurance policy permits the inference that it owned the baskets and Tres's testimony corroborates that inference. Because the record contains evidence to support the superior court's judgment, we affirm.[5]

¶21 Both parties seek an award of costs and attorneys' fees on appeal pursuant to A.R.S. §§ 12-341, -349. As the prevailing party, Tres is awarded costs upon compliance with ARCAP 21. Because neither party presented any argument in support of attorney's fees under A.R.S. § 12-349, we deny both requests.

¶22 Henni also requests attorneys' fees pursuant to A.R.S. § 14-3712. Even assuming that A.R.S. § 14-3712 authorizes an award of attorneys' fees, having found in favor of Tres, we deny Henni's request. We also deny Tres's request for attorneys' fees pursuant to A.R.S. § 14-1105.

---

[5] Henni's dispute was limited to the personal property in the Arizona ranch. Because we affirm the superior court's determination that Indian Rock owned the property and therefore was not part of Kristi's estate, Henni's arguments based on Tres's alleged failure to properly inventory and distribute that property are moot.

## CONCLUSION

¶23        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: gsh