NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE DEPENDENCY AS TO A.Y. and G.Y.

No. 1 CA-JV 23-0052
FILED 8-10-2023

Appeal from the Superior Court in Maricopa County
No. JD41678
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Emily M. Stokes
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Cynthia J. Bailey and Judge Brian Y. Furuya joined.

**M O R S E**, Judge:

¶1 Brent Y. ("Father") appeals the superior court's order adjudicating his children A.Y. and G.Y. dependent. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). Britney P. ("Mother") did not challenge the dependency order and is not a party to this appeal.

¶3 In 2013, Father and Mother lost a son to cancer. Following the loss of their son, Mother began taking anti-depressants, and Father began abusing Tramadol, a narcotic drug prescribed to him for back and shoulder pain.

¶4 In 2014, Aurora Health Care began treating Father for substance abuse. Following his treatment, Father received a prescription for suboxone to assist in the treatment of his Tramadol addiction, and for pain management.

*First Dependency*

¶5 In April 2022, A.Y. and G.Y.'s maternal grandmother ("Grandmother") filed a dependency petition, alleging that Father and Mother were unable to parent based on substance abuse, mental health, and neglect grounds. Specifically, Grandmother alleged that Father and Mother abused substances and could not provide stable housing. The Department of Child Safety ("DCS") received a report about Grandmother's private dependency petition and moved to intervene. The superior court granted DCS's motion.

¶6 In June 2022, the superior court held a dependency trial. During the trial, a DCS case manager testified that G.Y. said Grandmother had told him that his parents "snort drugs." The case manager also acknowledged that Father and Mother were leasing an apartment. Based on these facts, the superior court dismissed the petition. The court observed that "[Father] does have housing [and] the children . . . would not be living on the street." When considering the substance-abuse allegations, the court stated, "the evidence that was actually presented about drug use, it's very, very thin" and based only on "what [G.Y.'s] grandmother told him, not what

2

he observed." In response to Father's refusal to comply with the court's drug-testing order, the court found that, without more, a missed drug test was not sufficient to satisfy the burden of proof.

*Second Dependency*

¶7 Fifty-one days after the superior court dismissed the dependency petition, DCS brought a second petition on substance abuse, mental health, and neglect grounds. But DCS further alleged that shortly after the dismissal of the first petition, Father and Mother were forcibly evicted from their apartment, and that both children had witnessed their "parents snorting white pills."

¶8 DCS referred Father for services, including periodic drug testing, and requested that Father sign a release for his medical records. Father did not complete the drug testing and refused to sign any releases, leading DCS to move for a court order for Father's medical records. The superior court granted the motion, but DCS never requested the records.

¶9 The superior court held the second dependency trial. Mother failed to attend the trial, and Father attended telephonically. At the trial's conclusion, the superior court found A.Y. and G.Y. dependent as to both parents on the substance-abuse and neglect grounds. The superior court also included findings that "Father's testimony . . . has not been very credible."

¶10 After the deadline to appeal had expired, Father moved the superior court for more time to file an appeal. The superior court granted the motion. Father timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶11 Father argues that DCS presented insufficient evidence to establish that drug abuse rendered him unable to parent his children effectively. We review the superior court's decisions for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015); *Bob H. v. Ariz. Dep't of Econ. Sec.*, 225 Ariz. 279, 281, ¶ 9 (App. 2010). The superior court must find a child dependent by a preponderance of the evidence and "must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 48, ¶ 1 (App. 2016); *Louis C.*, 237 Ariz. at 490, ¶ 23.

¶12    The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We agree with the superior court that the evidence "is not particularly strong in this case," but affirm because there is reasonable evidence to show, by a preponderance of the evidence, that Father was "unable to provide effective parental care due to substance abuse." *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94, ¶¶ 6–7 (App. 2009) (observing that substantial evidence is evidence "which would permit a reasonable person to reach the trial court's result" (quoting *In re Est. of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999))).

¶13    Father admitted that he suffered an addiction to Tramadol in 2014, which caused him to seek inpatient rehabilitation treatment. Father was prescribed suboxone to treat his addiction and he continues to use the drug as a non-opiate pain management treatment. But the case manager testified that suboxone can be misused and abused. And the case manager testified that A.Y. and G.Y. told her that they saw Father snorting crushed white pills, that G.Y. identified as suboxone. Although the children did not testify about their observations directly, Father did not challenge the statements as unreliable, and the superior court accepted those statements as evidence. *See* A.R.S. § 8-237 (allowing a minor's reliable out-of-court statements to prove abuse or neglect in a dependency).

¶14    While Father argues that drug-use allegations mirror evidence rejected by the superior court in the first dependency trial, there is a key difference. During the first trial, the allegation that Father "snort[ed] drugs" was based on information conveyed by Grandmother to G.Y., not the child's own observations. But in the second trial, a witness testified that both children said they had personally "seen their parents snorting white pills."

¶15    The superior court also took a negative inference from Father's failure to submit to several drug tests. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287–88, ¶¶ 21, 25 (App. 2016) (citing parent's "refus[al] to take most of her required drug tests" as support for finding that drug abuse was ongoing); *Kara B. v. Dep't of Child Safety*, 1 CA-JV 21-0001, 2021 WL 2425907, at *3, ¶ 15 (Ariz. App. June 5, 2021) (mem. decision) ("Mother could have rebutted that negative inference by complying with requested drug tests and demonstrating sobriety, but she was unwilling to do so.").

¶16    Father failed to comply with the superior court's order to take a drug test during the first dependency trial. During the second

dependency proceedings in August 2022, DCS referred Father for drug testing. Despite several efforts to reach him, Father never completed any drug tests. The superior court then ordered Father to submit to a drug test no later than one-week before the second dependency trial. Again, Father disregarded the court's order. At trial, Father explained that he could not comply because DCS did not return his calls, he could not procure transportation, and he did not know which drug testing location to use. The superior court rejected Father's explanation as not credible. *See Oscar O.*, 209 Ariz. at 334, ¶ 4 (noting that the juvenile court is in the best position to "judge the credibility of witnesses").

**¶17**　　　The superior court did not abuse its discretion by finding that the negative inference, combined with A.Y. and G.Y.'s first-hand observations of substance abuse, were enough to meet the preponderance of the evidence standard.

**¶18**　　　Because we affirm the superior court's dependency order based on Father's substance abuse, we need not reach Father's challenge to the court's finding of neglect based on the failure to procure A.Y. and G.Y. adequate shelter. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶¶ 3–4 (App. 2002) (stating that a court may affirm if reasonable evidence supports at least one ground).

## CONCLUSION

**¶19**　　　For the reasons described above, we affirm the superior court's dependency order.



AMY M. WOOD • Clerk of the Court
FILED:　AA

5